## No. 13,285.

UNIVERSAL INDEMNITY INSURANCE COMPANY *v*. TENERY.

(39 P. [2d] 776)

Decided December 10, 1934.   Rehearing denied December 31, 1934.

Messrs. BARDWELL & BARDWELL, Mr. ERSKINE R. MYER, for plaintiff in error.

Mr. JAMES R. HOFFMAN, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

APRIL 22, 1932, Alfred Callahan rented an automobile from the Hertz Driv-ur-self System, Inc., signing a rental agreement therefor, and later in the evening, while admittedly under the influence of intoxicating liquor, he so carelessly and negligently operated the automobile as to cause a collision with a car driven by Mayo Tenery, defendant in error, resulting in personal injury to Tenery and property damage to Tenery's automobile.

Tenery filed a suit against Callahan and the Hertz System alleging negligence. Callahan defaulted and the Hertz System moved for dismissal under section 103(a), chapter 122 of the Session Laws of Colorado for 1931.

Chapter 122 referred to is known as the Uniform Motor Vehicle Act, and the section pertinent here is as follows:

"Section 103(a). The owner of a motor vehicle engaged in the business of renting motor vehicles without drivers, who rents any such vehicle without a driver to another, otherwise than as a part of a bona fide transaction, involving the sale of such motor vehicle, permitting the renter to operate the vehicle upon the highways, and who does not carry or cause to be carried public liability insurance in an insurance carrier or carriers approved by the Insurance Commissioner of this state, insuring the renter against liability arising out of his negligence in the operation of such rented vehicle, in limits of not less than $5,000 for any one person injured or killed and $10,000 for any number more than one injured or killed in any one accident, and against liability of the renter for property damage in the limit of not less than $1,000 for one accident shall be jointly and severally liable with the renter for any damages caused by the negligence of the latter, in operating the vehicle and for any damage caused by the negligence of any person operating the vehicle by or with the permission of the person so renting the vehicle from the owner, * * *.

"When any suit or action is brought against the owner under this section, it shall be the duty of the judge or court, before whom the case is pending, to cause a preliminary hearing to be had in the absence of the jury for the purpose of determining whether the owner has provided or caused to be provided insurance covering the **renter in the limits above mentioned.** Whenever it appears that the owner has provided or caused to be **provided insurance covering the renter in the sums** mentioned, it shall be the duty of the judge or court to

dismiss, as to the owner, the action brought under this section.''

The motion for dismissal set out, complies with the statute; as provided, the court caused a preliminary hearing to be held thereon, and, being satisfied as to compliance with the statute, ordered dismissal as to the Hertz System. Judgment was entered upon the default of Callahan for both actual and exemplary damages in the total sum of $2,575.44 including costs. Execution was issued on the judgment and returned nulla bona as to Callahan; whereupon garnishment was run against the Universal Indemnity Company, plaintiff in error, the company with which the Hertz System had a contract of insurance in full force at the time, and in compliance with the statute above quoted. This company will be hereinafter mentioned as the insurance company.

The insurance company answered the garnishee summons in the negative or to the effect that it had no monies or properties belonging to Callahan, and was not indebted to him. This answer was traversed by Tenery, the garnishor, and upon hearing between plaintiff and the garnishee, the court gave judgment against the garnishee in the full amount of the original judgment and dispensed with a motion for new trial.

Plaintiff in error presents its various assignments under four heads as follows:

1. Under the insurance policy, Exhibit C-1, and under the provisions of section 103 of chapter 122 of the Session Laws of Colorado for 1931, does the insurance company insure the driver of a rented vehicle against liability or against loss from liability?

2. Is the rental agreement between the driver of the car and the owner a part of the contract of insurance, and if so, does a violation of the provisions of the contract of insurance prevent recovery by the judgment debtor to whose rights and only to those rights, in a garnishment proceeding, the plaintiff succeeds?

3. May judgment be returned against this garnishee,

not only for the actual damages sustained by the defendant in error, but also for exemplary damages?

4.   Does the dismissal of the Hertz Driv-ur-self System, the insured in the original case below, on the ground that it has complied with the laws regarding insurance to be carried by the insured, bind the insurance company on its contract as an insurer against liability rather than against loss from liability?

1.   Counsel who procured a dismissal as to the Hertz System on the ground of compliance with the statute, appear in the garnishment proceedings as counsel for the insurance company.  They urged that there had been a compliance with the statute and later sought to establish nonliability in the garnishment proceedings under the terms of the policy.  They now argue that the policy of insurance is one of insurance against *loss* from liability rather than against liability.  As between the two clients, first, the Hertz System and, second, the insurance company, the position and contentions of counsel are inconsistent.  If the policy then in force does not cover liability, then it is an evasion of the statute and the original defendant, Hertz System, becomes liable.  Unless this policy was obtained and written for the express purpose of complying with the statute, then the entire matter becomes a sham.  However, sections 1 and 2 of the "riders" on the policy set this question at rest.  They are as follows:

"Any and all provisions of this policy which are in conflict with the statutes of the state wherein this policy is issued are understood, declared and acknowledged by this company to conform to such statutes.

"It is understood and agreed that the intent and purpose of this policy is to protect the Hertz Driv-ur-self System of Colorado and bailee insofar as Items 5 and 6 covering property damage and public liability to the limits as specified."

The requirement of the statute at once became a controlling part of the insurance contract, as effectively

as though incorporated therein. By reference to the statute, we find these words, ''insuring the renter *against liability* arising out of his negligence,'' and when this provision becomes, under the law, a part of the insurance contract, it is one of indemnity and insures against liability.

''A liability insurance policy indemnifying assured against loss from claims for damages by operation of an automobile, providing that no action to recover any loss shall be sustainable unless for loss actually paid by assured after trial, held not merely a reimbursement contract for money actually paid, but a liability contract; loss within the meaning of the insurance clause in the policy occurring the instant that liability attaches, and against such loss the insurer promises to indemnify the assured.'' *Goerss v. Indemnity Co. of America* (§2, syllabus), 223 Mo. App. 316, 317, 3 S. W. (2d) 272.

Unless the legislature intended to enact the statute here involved as a protection to the public, it was indulging in the most idle pretense. However, its intention is apparent, and the meaning of the statute plain. Tenery, plaintiff below, was a part of the public the legislature meant to protect. Undoubtedly the policy was written by the insurance company and accepted by the Hertz System to accomplish the purpose of the statute. The record discloses that this company in writing such insurance or indemnity as would meet the requirements of the statute, had the approval of the insurance commissioner of the state of Colorado and was licensed by him to do business in Colorado. This contract of insurance was made for the benefit of the public and any part of that public has the right to its enforcement.

Counsel for plaintiff in error contend that because the insured has suffered no loss on account of this judgment, that the insurance company is not liable until such loss occurs, and that the policy is not operative merely against liability. Section 2 of the special provisions of the policy precludes this contention. It is quoted as fol-

lows: "It is understood and agreed that the intent and purpose of this policy is to protect the Hertz Driv-ur-self System of Colorado and *bailee* insofar as Items 5 and 6 covering property damage and *Public Liability* to the limits as specified."

2. Is the rental agreement, an exhibit in this case, a part of the insurance contract? On its face, the exhibit, as signed by the bailee, contains no restrictions, the violation of which could be said to void a policy of insurance carried to protect the bailee. On the back of the rental agreement, but not over the signature of the bailee—and it is not shown that same was made known to him—it is stated that liability insurance as designated on the face of the rental agreement is subject to the limitations and restrictions of the policy, and the terms of said policy are made a part of the agreement. Among other restrictions on the back of the so-called rental agreement, this appears: (1) "This automobile must not be operated * * * by any person under the influence of intoxicants or narcotics." or (8) "For any illegal purpose or in violation of any Federal, State or Municipal law or regulation." These notations are not expressly or specifically made a part of the contract, and if any ambiguity exists thereby, such must be construed against the writer of the policy, according to the well settled law in such cases. If such restrictions appeared over the signature of the bailee, it could then be said that he assumed the same and would be bound thereby, as between himself and the insurance company.

Aside from this particular question, we are satisfied that the legislature never intended that the public should lose its protection by the insertion of any such provisions evading liability, the manifest intention being to insure and protect the public.

"To restrict insurance to cases where liability is incurred without fault of the insured would reduce indemnity to a shadow. * * * Liability of the owner, who is also the operator, can never be incurred without fault

that is personal. Indeed, the statute has so covered the field that it can seldom, if ever, be incurred without fault that is also crime." *Messersmith v. American Fidelity Co.*, 232 N. Y. 161, 133 N. E. 432.

This statute, the policy of insurance and the rental agreement, must be given a construction that is consonant with the purpose and intent of the legislature to permit a recovery by an injured member of the public regardless of the acts of the insured.

3. There is no assignment of error directed to this point, and ordinarily under the well settled rule, it would not be considered by us; but the court may notice questions, not raised by the assignments of error, that appear on the face of the record, when such consideration is necessary to do justice. *Baker v. Denver Tramway Co.*, 72 Colo. 233, 210 Pac. 845. Included in the total amount of the judgment entered against the garnishee herein, was the award of exemplary damages against defendant Callahan in the sum of $1,000. This award was primarily for the punishment of Callahan for his wrongful acts, and as a warning to others. It was in nowise compensation to the injured party for bodily injuries, or actual loss occasioned by the negligence of Callahan. The insurance company did not participate in this wrong, and was under no contract to indemnify against such. In this particular matter, the policy indemnifies against damages for bodily injuries, and nothing in addition is contracted for and there is no further liability. The injured will not be allowed to collect from a nonparticipating party, for a wrong against the public. For the reasons above stated the judgment should be modified by the deduction of the $1,000 included as exemplary damages.

4. It is contended by counsel for plaintiff in error, that because the insurance company denied liability under the policy long before suit, and that as the case was dismissed as to the Hertz System, the insured, the insurer could not be bound by a judgment in a case to

which it was not a party. There is no direct assignment of error on this point, which is for the first time presented by counsel in this court. The trial court was not asked to determine this question, but it found in effect, that the insurance company had notice of the claim and suit; that it did not contest the alleged negligence of Callahan, the bailee, but proceeded on the theory that the question involved was purely one of law as to whether the policy covered liability or *loss* from liability. This case, like many others, must be determined from its own facts. The conclusion of the trial court is supported by the record as we find it.

At the beginning of the trial on the traverse, the following occurred: Mr. Hoffman, opening the case, in addressing the court, said: "* * * The action was then dismissed by this court as against the Hertz Driv-ur-self System upon a showing that such an insurance policy was being carried. The record will show that Mr. Bardwell, who is counsel for the insurance company, was in the court room at that time, and I had the case set for trial as against Callahan at that time. The case was set for trial, and came on for trial and judgment * * *.

"Mr. Myer: I do not want to interrupt, but do I understand your statement to be that Mr. Bardwell represented Mr. Callahan?

"Mr. Hoffman: Not at all. This is to show he represented the insurance company and the Hertz Driv-ur-self System, and that he was in the court room and knew when the case was set for trial. *I do not want any question regarding notice.*"

Later in the proceedings:

"The Court: I presume the issue is whether the policy covered the situation.

"Mr. Myer: *The real issue is whether or not certain conditions precedent had been complied with in order to give this man the right of recovery.*"

At the close of the trial, Mr. Myer made this statement:

"The garnishees rest. If your Honor please, I am advised there is no further evidence on behalf of the plaintiff. *The questions involved in this suit are largely legal questions. My own idea of it is that they can be raised and properly argued upon a motion for nonsuit at this time; they have to do entirely with the provisions of the policy and the law.*"

He made and argued a motion for nonsuit. Exhibits D-1 and E-1 show demand upon Hertz System and the insurance company for damages, and denial of liability of the insurance company on account of drunkenness of Callahan.

The insurance company, in this case, was in court defending on the traverse and stood squarely and solely upon the question of the conditions of the policy. To do so, it defended against its liability to Callahan. It submitted to the jurisdiction of the court, raised no question as to the judgment, and thereby waived its right to the claim here made.

The judgment as modified is affirmed.

MR. CHIEF JUSTICE ADAMS not participating.