**Donald E. FLICKINGER,**
**Plaintiff–Appellant,**

v.

**NINTH DISTRICT PRODUCTION CREDIT ASSOCIATION OF WICHITA, KANSAS, a federally chartered corporation; Victor T. Roushar, individually and as a partner of Woodrow, Roushar & Carey, a partnership; Woodrow, Roushar & Carey, a partnership; and Fireman's Fund Insurance Companies, a stock insurance company, Defendants–Appellees.**

No. 89CA2161.

Colorado Court of Appeals,
Div. I.

June 6, 1991.

Rehearing Denied Aug. 1, 1991.

Certiorari Denied Jan. 27, 1992.

Ahrens & Alexander, Marjorie M. Kesl, John F. Arens, Richard P. Alexander, Fayetteville, Ark., John A. Meininger, Denver, for plaintiff-appellant.

Holland & Hart, Steven G. Barringer, Charles M. Johnson, Jane L. Montgomery, Denver, John J. Mitchel, Montrose, for defendants-appellees Ninth Dist. Production Credit Ass'n of Wichita, Kan., Victor T. Roushar, and Woodrow, Roushar & Carey.

Long & Jaudon, P.C., Michael T. McConnell, Denver, for defendant-appellee Fireman's Fund Ins. Companies.

Opinion by Judge CRISWELL.

Plaintiff, Donald Flickinger, appeals from the summary judgment dismissing his claims against all of the defendants. He argues that the trial court erred in concluding that certain claims he asserted were barred by the doctrines of *res judicata* and collateral estoppel. He also argues that his claims against Fireman's Fund Insurance Co. (Fireman's Fund) were not barred by the expiration of the time limits for assertion of claims contained within the pertinent insurance policy, as the trial court determined. We affirm the judgment dismissing plaintiff's claims against all defendants, except his tort claim against Fireman's Fund; we reverse the judgment dismissing this latter claim.

The present controversy arises from a replevin action commenced in the Montrose County District Court (the replevin court) by the predecessor in interest to the defendant, Ninth District Production Credit Association of Wichita (Association), in August 1985. That action was commenced to foreclose upon certain real and personal property which had been pledged as security for the repayment of loans made to plaintiff's father (the father) by the Association's predecessor. While no claim for relief was asserted against plaintiff in that action, he was joined as a defendant so that the secured party's interest in the real and personal property of the father, including his cattle, could be adjudged to be superior to any interest that plaintiff might claim in this property.

When the Association began to take possession of the father's cattle pursuant to the replevin court's order, it was discovered that some of plaintiff's livestock, including some young, unbranded calves, were mixed in with the father's herd. Consequently, the Association made an *ex parte* application to the court for emergency relief, and the replevin court entered an order authorizing the Association to take possession of all the cattle, including plaintiff's cattle.

This order also required that, after plaintiff's cattle were permitted to "mother up" (*i.e.*, after mother cows and calves found each other and grouped together), the Association would return all of plaintiff's cattle to him. It also provided that, if any party suffered damage from the Association's temporary possession of the cattle, a written claim therefor was to be filed with the replevin court on or before June 1, 1986. Thereafter, any such claim would be heard by that court "in the same manner as any tort or contract claim."

The Association then took possession of all the cattle, including some cattle belonging to plaintiff. At least some of plaintiff's cattle were subsequently returned as required by the court order; however, plaintiff claims that a number of the cattle seized were never returned and that some cattle were returned in a weakened condition.

Although plaintiff was made aware, almost immediately, of the entry of the replevin court's order and of its contents, he took no action in the replevin court (where he had been made a party) to challenge its validity. Instead, on May 1, 1986, plaintiff instituted an action against the Association and the Sheriff of Saguache County, who had executed the replevin court's order of replevy, in the Saguache County District Court (Saguache court).

Plaintiff's complaint in the Saguache court asserted that the replevin court had "no jurisdiction whatsoever over the property or things of the Plaintiff." However, the Saguache court concluded that, because plaintiff was a party to the replevin action and that court had already asserted its jurisdiction over any claim to be asserted by plaintiff, the Saguache court lacked jurisdiction. That court, therefore, dismissed plaintiff's complaint, and he did not appeal from that judgment of dismissal.

Before June 1, 1986, the date set by the replevin court therefor, plaintiff appeared in that court and obtained a 30-day extension of time within which to file a claim. However, plaintiff failed to file any claim within this revised deadline.

More than one year later, plaintiff instituted suit against the Association and other defendants, including the replevin court judge, in the United States District Court for the District of Colorado. Plaintiff's complaint in the federal court asserted that the replevin court had been without jurisdiction to enter the emergency order and that its order constituted a denial of his rights to procedural due process under the Fifth and Fourteenth Amendments. Therefore, he sought to state a claim against the replevin court judge under 42 U.S.C. § 1983 (1982). In addition, he sought to assert various state law claims against the private defendants.

The federal district court first refused to assert its pendent jurisdiction over plaintiff's state law claims. Later, the court dismissed the federal claims against the replevin court judge because of his absolute judicial immunity under 42 U.S.C. § 1983. The United States Court of Appeals for the Tenth Circuit affirmed this latter order.

While this federal litigation was still pending, plaintiff filed a second complaint with the Saguache court, which was based on the same facts as was his previous complaint in that court. The Saguache court again dismissed his claims, concluding for a second time that the replevin court had exclusive jurisdiction over the subject matter of plaintiff's claims. Again, plaintiff did not appeal from this second judgment of dismissal.

In November 1988—some 28 months after the date set by the replevin court for the filing of claims arising out of the seizure by the Association of plaintiff's cattle—plaintiff filed a pleading with the replevin court entitled, "Supplemental Counterclaim, Third–Party Complaint, and Claim for Jury Demand." By this date, however, the claims of the other parties to that litigation had already been finally resolved.

Hence, the replevin court directed that plaintiff's pleading be stricken, relying on the deadline set by the emergency order entered by it and on plaintiff's alleged failure to comply with the provisions of C.R.C.P. 15(d) (which regulates the filing of supplemental pleadings). Plaintiff did not appeal from this order.

Finally, on March 9, 1989, plaintiff instituted this action in the replevin court, in which he joined the present defendants. All the claims asserted against the Association and the individual defendants were based upon the events surrounding the original replevin action and the Association's action in taking possession of plaintiff's cattle. Thus, they were grounded on the same set of factual circumstances as were the claims asserted in the two complaints filed with the Saguache court, the supplemental pleading filed with the replevin court, and the complaint filed with the federal district court.

Plaintiff also asserted two claims against Fireman's Fund. The first claim was based upon a policy of insurance protecting plaintiff against theft, while the second asserted a tort claim of a bad faith refusal to consider this claim under the policy and sought punitive damages.

## I.

Plaintiff first contends that the trial court erred in ruling that his claims against the Association and the individual defendants were barred by the related doctrines of *res judicata* and collateral estoppel. We disagree.

The trial court in this case concluded that, because no motion for reconsideration was filed with the replevin court and no appeal was taken from the emergency order entered by that court, the emergency order became the "law of the case" in the replevin action. In addition, that court concluded that the determinations of the Saguache court in ruling on the subsequent complaints filed with that court, as well as the judgment of the replevin court striking plaintiff's supplemental pleading, collaterally estopped plaintiff from asserting the

present claims against these defendants. Although we differ somewhat in our reasons, we agree with the result reached by the trial court.

Plaintiff was named as a defendant in the original replevin action and was served with process by the Association. Further, as evidenced by the pleadings filed by him with the replevin court and with the Saguache court, plaintiff had actual notice of the contents of the emergency order shortly after it was entered. Thus, the replevin court had personal jurisdiction over plaintiff. *See Continental Trust Co. v. Patterson,* 26 Colo.App. 186, 142 P. 422 (1914).

The rule of procedure that governs replevin actions permits a third party, who claims some interest in property seized by the sheriff, to intervene in the replevin proceedings. C.R.C.P. 104(m). The replevin court, therefore, also had subject matter jurisdiction to try the claims of third parties concerning the property in question, because such property was in the possession of the court. Thus, even if we were to assume that the replevin court erred in requiring plaintiff to assert his claims in that court, such error would not constitute an assumption of improper jurisdiction by it. It constituted, at most, mere legal error. *See In re Application of Monaghan Farms, Inc. v. Denver,* 807 P.2d 9 (Colo. 1991); *In re Marriage of Channell,* 797 P.2d 819 (Colo.1990).

Further, as a party to the replevin action, plaintiff had standing to contest the propriety of the emergency order either directly in the replevin court, in the supreme court in original proceedings under Colo. Const. art. VI, § 3, or, after final judgment, by appeal to this court. He took none of these actions, however.

Rather, he sought judicial relief from other tribunals, including the Saguache court, in which the validity of the emergency order of the replevin court was an issue. Each such tribunal, as well as the original replevin court, refused to grant plaintiff relief from the order of the replevin court. Yet, he took no appeal from any of these final judgments.

At this point, therefore, plaintiff has waived his right to contest the validity of the order of the replevin court. Since the replevin court had jurisdiction, both of the subject matter and over plaintiff's person, plaintiff's failure to appeal either directly from the replevin court's emergency order, from that court's later final judgment, or from the Saguache court's judgment refusing to interfere with that order, bars plaintiff from seeking to attack that order in this action. *See In re Application of Monaghan Farms, Inc. v. Denver, supra; In re Marriage of Channell, supra; Fitzgerald v. District Court,* 177 Colo. 29, 493 P.2d 27 (1972).

Thus, the trial court properly ruled that plaintiff's failure to comply with the replevin court's order and to file his claims against the Association and the individual defendants in accordance with that order bars his assertion of such claims in this action.

## II.

Plaintiff also argues that the trial court erred in dismissing both his claims against Fireman's Fund. While we conclude that the trial court properly dismissed plaintiff's claim under the insurance policy itself, we agree with him that that court erred in dismissing the tort claim he asserted against this defendant.

We should first note that Fireman's Fund has not argued that the claims asserted by plaintiff against it were required to be asserted under the replevin court's emergency order. Thus, while plaintiff joined Fireman's Fund as a defendant in his second complaint filed with the Saguache court and in his third-party complaint filed in the original replevin proceedings, Fireman's Fund does not argue that the dismissal of these pleadings bars the assertion of the claims now under consideration.

The insurance policy issued to plaintiff by Fireman's Fund contains a provision which states:

"Suit against us. You can sue us to recover *under Section 1–Property of this policy* only if:

. . . .

b. You start the lawsuit within one year after the loss occurs." (emphasis supplied)

The trial court concluded that this provision applied to both claims that plaintiff had laid against Fireman's Fund, and because this suit was commenced more than one year after plaintiff's loss, it dismissed both claims on this basis.

Plaintiff argues, however, that the tort claim of refusing to settle in bad faith is not one arising "under Section 1–Property" and is not, therefore, subject to this policy provision. He also contends that, with respect to his other claim, which admittedly arises under the referenced portion of the insurance contract, Fireman's Fund has waived its right to rely upon this contractual time limitation and is equitably estopped from doing so.

We consider each of these arguments separately.

### A.

■ We agree with plaintiff that his tort claim, based upon Fireman's Fund's alleged bad faith, is not a claim arising "under" the pertinent policy; it is, rather, a claim that exists independently from the liability imposed by the insurance contract. Hence, we conclude, contrary to the conclusion reached by the trial court, that a contractual time limitation upon the commencement of litigation cannot be applied to bar such a tort claim.

■ Colorado recognizes that an insurance carrier subjects itself to damages beyond the monetary payments called for by its policy, including punitive damages, if it fails in good faith to consider claims asserted under a policy issued by it. And, this is true whether the claim is one asserted by the insured himself, *Travelers Insurance Co. v. Savio*, 706 P.2d 1258 (Colo.1985); *see Farmers Group, Inc. v. Williams*, 805 P.2d 419 (Colo.1991), or by a third party against an insured under a policy providing liability coverage. *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984).

■ Moreover, while the standard against which the carrier's conduct is to be measured will vary, depending upon whether it is a "first party" or "third party" claim that is involved, the claim is, in either event, separate from, and independent of, any claim under the policy itself.

Thus, in *Travelers Insurance Co. v. Savio, supra*, the supreme court noted that the duty of a workers' compensation insurance carrier to pay benefits under the Workers' Compensation Act is "factually and analytically distinct from its duty to deal in good faith with claimants," although both duties involve a common loss. Determination whether a carrier has exercised good faith, it said, "presents a related, but quite different, question, the resolution of which *does not depend upon the validity of the underlying compensation claim.*" (emphasis supplied)

Likewise, in *Farmers Group, Inc. v. Trimble, supra*, the supreme court emphasized that, in the circumstance of bad faith, "it is the affirmative act of the insurer in unreasonably refusing to pay a claim and failing to act in good faith, and *not the condition of nonpayment*, that forms the basis for liability in tort." (emphasis supplied)

The carrier's tort liability, therefore, does not depend upon its liability under the insurance contract. And, this being so, it follows that the tort claim does not arise "under" that contract.

Courts that, like Colorado, consider a bad faith claim to be one separate from a claim under the policy, have refused to apply a time limitation applicable to contract claims arising under the policy to such a tort claim, whether those limitations are established by statute, *United Department Stores Company No. 1 v. Continental Casualty Co.*, 41 Ohio App.3d 72, 534 N.E.2d 878 (1987), or by the policy itself. *Lewis v. Farmers Insurance Co.*, 681 P.2d 67 (Okla.1983); *Plant v. Illinois Employers Insurance of Wausau*, 20 Ohio App.3d 236, 485 N.E.2d 773 (1984).

While some courts have reached a contrary conclusion, they have applied the law of jurisdictions, which, unlike Colorado, do

not view a bad faith claim as one arising independently, but merely as an aggravated circumstance attendant upon the failure to pay under the policy, which gives rise to liability for additional damages. *See Home Federal Savings & Loan Ass'n v. Dooley's of Tucson, Inc.*, 716 P.2d 1042 (Ariz.App.1986); *Zeiba v. Middlesex Mutual Assurance Co.*, 549 F.Supp. 1318 (D.Conn.1982) (applying Connecticut law).

In light of the nature of such a claim under Colorado law, however, we conclude that a tort claim based upon an insurance carrier's bad faith is not one arising "under" the policy, and thus, such a claim is not barred by any time limit set forth in that policy. Hence, we conclude that the court erred in dismissing the bad faith tort claim asserted against Fireman's Fund based upon the time limit set forth in its policy.

### B.

■ While plaintiff concedes that the time limit set forth in the policy is applicable to his claim that Fireman's Fund failed to pay under that policy, he argues that the trial court erred in concluding, as a matter of law, that Fireman's Fund's actions did not estop it from relying upon this contractual limitation. We disagree.

■ To establish an estoppel, which is not favored in the law, plaintiff would be required to show that: (1) Fireman's Fund knew the pertinent facts; (2) it *intended* that its conduct be relied upon or that plaintiff, as a reasonable person, had a right to believe that that conduct was so intended; (3) plaintiff was ignorant of the true facts; and (4) plaintiff reasonably relied upon Fireman's Fund's conduct to his injury. *See Dove v. Delgado*, 808 P.2d 1270 (Colo.1991).

The date of plaintiff's loss was May 1, 1986, and no suit of any sort was instituted against Fireman's Fund until December 21, 1987, when plaintiff joined that defendant in his second Saguache court action. Thus, if Fireman's Fund did not waive, and is not estopped from relying on, the policy time limit, his claim based on the policy is barred.

The only evidence submitted by plaintiff in opposition to Fireman's Fund's motion for summary judgment consisted of a series of correspondence between plaintiff or his counsel and the claims adjuster. This correspondence reflects that, in the first letter to plaintiff, he was specifically advised that no later actions in investigating plaintiff's claim should be taken as a waiver of any of the policy's provisions. That correspondence also notified plaintiff that Fireman's Fund was denying his claim, for lack of coverage, on February 19, 1987, more than two months before the period set by the policy to commence litigation had expired.

It is true that on April 17 of that year, a Fireman's Fund's agent, in confirming his prior denial of plaintiff's claim, told him that, if plaintiff could point to any instance in which a similar occurrence had been held to be covered by a similar policy, Fireman's Fund would "reconsider our position." Yet, no reply was sent to this letter until August 7, 1987, long after the time for commencing suit had expired. And, this letter cited no similar instance.

In light of this documentary evidence, we agree with the trial court that plaintiff could not have reasonably concluded that Fireman's Fund intended to, or did, waive the right to enforce the policy limitation, and that it is not estopped from relying on that limitation. *See Dove v. Delgado, supra; Capitol Fixture & Supply Co. v. National Fire Insurance Co.*, 131 Colo. 64, 279 P.2d 435 (1955).

The judgment of the trial court is affirmed, except that that portion of the judgment dismissing plaintiff's bad faith tort claim asserted against Fireman's Fund is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

PIERCE and REED, JJ., concur.