Joel LIRA, Petitioner,

v.

**SHELTER INSURANCE COMPANY,** a/k/a Shelter Mutual Insurance Company, a/k/a Shelter General Insurance Company, a/k/a Shelter Life Insurance Company, Respondent.

No. 95SC153.

Supreme Court of Colorado, En Banc.

March 25, 1996.

Rehearing Denied April 15, 1996.

Law Office of Neil D. O'Toole, P.C., Neil D. O'Toole, Denver, for Petitioner.

Levy & Lambdin, Professional Corporation, Suzanne Lambdin, Scott P. Landry, Englewood, for Respondent.

Colorado Trial Lawyers Association, Susanna Meissner–Cutler, Denver, McDermott and Hansen, William J. Hansen, Denver, Breit, Bosch, Levin & Coppola, Bradley A. Levin, Denver, Thomas L. Roberts, Denver, for Amicus Curiae Colorado Trial Lawyers Association.

Berryhill, Cage & North, P.C., Mark W. Williams, Denver, for Amicus Curiae National Association of Independent Insurers.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *Lira v. Shelter Insurance Co.*, 903 P.2d 1147 (Colo.App. 1994), which held that when an insured's only claimed damages are the outstanding punitive damages awarded against him in the underlying suit, the insured may not recover against the insurer for acting in bad faith in failing to settle. We affirm the decision of the court of appeals.

### I.

Early in the morning on January 3, 1988, Joel Lira (Lira) became involved in an altercation with another driver, Edgar Gunn (Gunn), while traveling northbound on Interstate 25. Lira had spent much of the prior evening consuming beer at various locations. According to Lira's testimony, Gunn pulled in front of him and stopped suddenly, causing Lira's vehicle to collide with Gunn's vehicle and lock bumpers with it. The two drivers then exited their vehicles, leaving the vehicles in a traffic lane on Interstate 25, and began fighting on the highway. After the two finished fighting, Gunn left the scene in his vehicle. Lira departed on foot, abandoning his vehicle in the traffic lane on Interstate 25. Lira neglected to report to any authorities that he had left his vehicle in the path of oncoming traffic.

Soon thereafter, Lira's vehicle was struck by Jeffrey Davis (Davis), who was traveling north in his vehicle on Interstate 25. Subsequently, Davis brought an action against Lira, seeking compensatory and punitive damages. Shelter Insurance Company ("Shelter"), as Lira's insurance company at the time of the accident, hired a law firm to defend Lira. Shelter also notified Lira by correspondence that

> the plaintiff is seeking punitive damages. Exclusion 11 on Page 5 of your policy exclude (sic) punitive damages from coverage under your policy. Should there be a judgment rendered against you for punitive damages, you would be responsible for same. Again, you have a right to hire an attorney at your expense to defend you as to the punitive damages.

During the pretrial proceedings, Davis offered to settle his claims against Lira for the policy limit of $50,000. Shelter, on behalf of Lira, refused this offer, and made a counteroffer of $10,000. Shelter based this counteroffer on its assessment that Davis had incurred $30,000 in losses relating to the accident and that Lira should be liable for one-third of those losses.[1] Davis refused Shelter's counteroffer, and the case proceeded to trial.[2]

---

1. This assessment was based upon the doctrine of comparative negligence. Shelter theorized that Davis, as well as Gunn and others at the scene, shared liability with Lira for the accident. After trial, the jury assigned Lira 50% of the liability for Davis's injuries.

2. Lira does not contend that Shelter breached its duty to defend him against the compensatory or punitive damages, only that Shelter breached its duty to settle. Indeed, Shelter did eventually defend Lira against the entire claim, after Shelter notified Lira that he had the right to hire his own counsel with regard to the punitive damages and

After trial, the jury returned a verdict against Lira in the amount of $87,300 in compensatory damages and $87,300 in punitive damages. The trial court reduced the compensatory damages award to $43,650, pursuant to the comparative negligence statute, section 13–21–111, 6A C.R.S. (1987), and the pro rata liability statute, section 13–21–111.5, 6A C.R.S. (1987). Additionally, the trial court reduced the punitive damages award to $43,650, pursuant to the punitive damages statute, section 13–21–102(1)(a), 6A C.R.S. (1987). The damages awards were upheld by this court. *Lira v. Davis*, 832 P.2d 240, 246 (Colo.1992).

Shelter satisfied the compensatory damage award, plus interest and costs, the total of which was within the $50,000 limit of Lira's policy with Shelter. Shelter declined to pay the punitive damages awarded against Lira, as Lira's insurance policy exempted punitive damages from coverage.

Lira then brought the instant action against Shelter for bad faith breach of Lira's insurance policy, alleging that Shelter acted in bad faith by failing to settle Davis's action against Lira. The damages alleged by Lira were the $43,650 in punitive damages, plus interest, awarded against Lira in the underlying suit.[3] After trial, the jury in the instant case returned a verdict against Shelter in the amount of $58,000.

Shelter appealed, and the court of appeals reversed the jury's verdict, holding that an insured may not recover against his insurer for a bad faith failure to settle when the insured's only claimed damages are the punitive damages awarded against him in the underlying suit.[4]

## II.

Lira contends that the court of appeals erred by reversing the jury verdict in his favor on the basis that an insured may not recover against his insurer for bad faith in failing to settle when the insured's only claimed damages are the punitive damages awarded against him in the underlying suit. Shelter contends that the court of appeals' ruling is correct, because it prevents responsibility for punitive damage awards from being shifted to the insurer in contravention of Colorado policy underlying imposition of punitive damages. This question is an issue of first impression in Colorado. We hold that in an action by an insured against his insurer for bad faith failure to settle, the insured may not collect as compensatory damages the punitive damages awarded against him in the underlying lawsuit.

An insurer's tort liability for breach of its implied duty of good faith and fair dealing derives from the nature of the insurance contract and the relationship between the insured and insurer. *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo. 1984). This tort liability is based on the quasi-fiduciary nature of the insurance relationship and is predicated on the parties' contractual responsibilities. *Trimble*, 691 P.2d at 1142; *Bailey v. Allstate Ins. Co.*, 844 P.2d 1336, 1339–40 (Colo.App.1992). The tort duty imposed upon the insurer, therefore, must be within the scope of the obligations imposed by the contract. An insurer who has not contracted to insure against its insured's liability for punitive damages has no duty to settle the compensatory part of an action in order to minimize the insured's exposure to punitive damages. *Magnum Foods, Inc. v. Continental Casualty Co.*, 36 F.3d 1491, 1506 (10th Cir.1994); *Zieman Mfg. Co. v. St. Paul Fire & Marine Ins. Co.*,

Lira declined to do so. Moreover, Lira alleges no deficiency in Shelter's representation of him at trial.

3. Lira testified at trial that Shelter's bad faith refusal to settle caused him no other damages than the punitive judgment rendered against him.

4. Shelter does not argue that, upon the record, no reasonable jury could have found that bad faith existed in this case. The issue is thus not before us. However, the record indicates that Shelter made a thorough investigation of the claim; made an evaluation of the value of the case based upon that investigation; and proceeded to trial only when its offer of settlement, based upon that evaluation, was rejected. Moreover, it is noteworthy that the final judgment for compensatory damages of $43,650 was in accord with Shelter's refusal to settle for the policy limits of $50,000.

724 F.2d 1343, 1346 (9th Cir.1983).[5] Thus, if the insurer has no contractual duty to indemnify the insured for punitive damages, the insurer has no tort duty to settle in good faith with regard to punitive damages.

 Bad faith breach of an insurance contract may subject the insurer to traditional tort damages. *Ballow v. PHICO Ins. Co.,* 878 P.2d 672, 677 (Colo.1994). The insurer may become liable to the insured in tort for compensatory damages, such as for an award of damages in excess of the policy limits or for emotional distress. *Id.* If the breach is found to be accompanied by circumstances of fraud, malice, or willful and wanton conduct, the insurer may also be liable to the insured for punitive damages arising from the insurer's conduct. *Id.* at 682. This court has never decided whether an insured may recover compensatory damages consisting solely of the punitive damages from the underlying third-party action from an insurer who commits a bad faith breach of the insurance contract.

 In the instant case, the Shelter Automobile Insurance Policy provided that Shelter would not be liable for punitive damages incurred by the insured. Shelter's duty to settle, therefore, did not encompass a duty to protect the petitioner from exposure to punitive damages. Shelter cannot be held liable for damages for breach of a duty which it did not have in the first place. The damages which are claimed to be "compensatory" in the instant case are none other than the punitive damages from the underlying case. The contract between the parties expressly precluded recovery for punitive damages incurred by the insured. The insured may not later utilize the tort of bad faith to effectively shift the cost of punitive damages to his insurer when such damages are expressly precluded by the underlying insurance contract.

 This reasoning is in accord with Colorado case law and policy regarding punitive damages. The public policy of Colorado prohibits an insurance carrier from providing insurance coverage for punitive damages. *See Universal Indemnity Ins. Co. v. Tenery,* 96 Colo. 10, 17, 39 P.2d 776, 779 (1934); *Gleason v. Fryer,* 30 Colo.App. 106, 109, 491 P.2d 85, 86 (1971). Punitive damages are not meant to reimburse an injured plaintiff for harm suffered by that individual, but rather are intended to punish the defendant for his wrongful acts and to deter similar conduct in the future. *Seaward Constr. Co. v. Bradley,* 817 P.2d 971, 974 (Colo.1991). To allow the petitioner in this case to recover compensatory damages which derive from his own wrongful conduct undercuts the public policy of this state against the insurability of punitive damages.

The Court of Appeals of New York reached the same conclusion under similar factual circumstances in *Soto v. State Farm Insurance Co.,* 83 N.Y.2d 718, 613 N.Y.S.2d 352, 635 N.E.2d 1222 (1994). That case involved an auto accident in which the insured's car, driven by another individual, struck and killed two victims. The victims' administrators then brought actions against the insured and the driver. Despite the administrators' willingness to settle the action for the policy limits, the insurer, defending the case on behalf of the insured, declined to offer that amount in settlement. The case proceeded to trial, resulting in a judgment against the insured for $420,000 in compensatory damages and against the driver for $450,000 in punitive damages.

The insurer paid the plaintiffs the full amount of the compensatory damage award, but declined to pay the punitive damages. Consequently, the decedents' administrators took an assignment of the insured's and the driver's rights against the insurer, and brought an action against the insurer for bad faith refusal to settle under the insurance contract. The action alleged that in refusing to settle the claim, the insurer recklessly disregarded the interests of its insureds in the face of the clear likelihood of a jury award in excess of the policy limits. The insurer moved to dismiss the action, and the trial court granted the motion, holding that

---

**5.** At trial, the jury was instructed that "[a]n insurer does not have an absolute duty to settle a claim, merely to avoid the risk of punitive damages." This instruction is not challenged in the appeal before us.

the punitive damages in the underlying lawsuit were not properly recoverable as a consequential damage of the insurer's breach of its obligation to act in good faith. *Id.* 613 N.Y.S.2d at 353–54, 635 N.E.2d at 1223–24.

The Court of Appeals of New York affirmed the trial court, stating the "fundamental principle that no one shall be permitted to take advantage of his own wrong." *Id.* at 354, 635 N.E.2d at 1224. The court clarified that this principle retains vitality despite the "existence of an entirely separate and analytically distinct wrong on the part of the insurer." *Id.* at 355, 635 N.E.2d at 1225. The court went on to hold:

> Regardless of how egregious the insurer's conduct has been, the fact remains that any award of punitive damages that might ensue is still directly attributable to the insured's immoral and blameworthy behavior.
>
> Our system of civil justice may be organized so as to allow a wrongdoer to escape the punitive consequences of his own malfeasance in order that the injured plaintiff may enjoy the advantages of a swift and certain pretrial settlement. However, the benefit that a morally culpable wrongdoer obtains as a result of this system, i.e., being released from exposure to liability for punitive damages, is no more than a necessary incident of the process. It is certainly not a *right* whose loss need be made subject to compensation when a favorable pretrial settlement offer has been wasted by a reckless or faithless insurer.

*Id.* The court further held that the punitive damages awarded against an insured in the underlying third-party lawsuit are not a proper element of the compensatory damages recoverable from an insurer for a bad faith refusal to settle. *Id.; accord Magnum Foods,* 36 F.3d at 1505–06 ("[A] risk that a wrongdoer will suffer the consequences of his own malfeasance is not one that may be shifted to an insurer.").

The reasoning of the Court of Appeals of New York in *Soto* is sound, and we apply the same to the instant case. To hold otherwise would, in practical application, force insurers to settle cases involving punitive damages in order to avoid liability for the same punitive

damages in subsequent bad faith actions. Such a result would be contrary to the principle that insurers have no absolute duty to settle in order to protect their insureds from punitive judgments. *See Zieman,* 724 F.2d at 1346 ("The proposition that an insurer must settle, at any figure demanded within the policy limits, an action in which punitive damages are sought is nothing short of absurd. The practical effect of such a rule would be to pass on to the insurer the burden of punitive damages in clear violation of California statutes and public policy.").

Moreover, the holding we reach today does not, as asserted by the petitioner, allow insurance companies to act in bad faith with impunity. Insurance companies failing to settle in bad faith will still be subject to liability for damages arising from the breach, such as damages for excess liability and emotional distress. *Ballow,* 878 P.2d at 682. We merely decline to extend the tort of bad faith breach of an insurance contract to encompass liability for the punitive damages from the underlying lawsuit. Accordingly, we affirm the holding of the court of appeals.

LOHR, J., dissents, and KIRSHBAUM and MULLARKEY, JJ., join in the dissent.

Justice LOHR dissenting:

In this tort action brought by Joel Lira against Shelter Insurance Company (Shelter) for bad faith breach of an automobile liability insurance contract, the majority holds that when an insured's only claim is for punitive damages awarded against him in the underlying lawsuit, the insured cannot recover. Maj. op. at 516, 517, 518. In so holding, the majority affirms a decision of the Colorado Court of Appeals which reversed a trial court judgment in favor of Lira. *See Lira v. Shelter Ins. Co.,* 903 P.2d 1147 (Colo.App.1994). I respectfully dissent.

I.

The facts and procedural history of this case need be outlined only briefly. A third party brought an action against Lira seeking compensatory and punitive damages arising out of an auto accident that occurred when a car driven by the third party struck Lira's

vehicle which he had abandoned in a traffic lane of Interstate 25. Shelter was Lira's insurer and controlled all aspects of the defense and settlement of the litigation on Lira's behalf. After Shelter declined the third party's offer to settle all claims for the $50,000 policy limit, the case went to trial and ultimately resulted in a judgment against Lira for $43,650 in compensatory damages and an equal amount of punitive damages. Shelter paid the compensatory damages awarded but declined to pay any of the punitive damages, relying on an exclusion of punitive damages from coverage under the liability insurance contract.

Lira then brought the present action in tort for bad faith breach of insurance contract, contending that Shelter breached its duty of good faith to him by failing to avail itself of the opportunity to settle the underlying personal injury action within policy limits. Lira sought compensatory damages from Shelter based on the punitive damages awarded against him in the underlying action. The case went to trial, and a jury found that Shelter had acted in bad faith, causing $58,000 in damages to Lira. Neither the finding of bad faith nor the amount of damages is at issue before us.[1] The court of appeals reversed on the basis that "since punitive damages are plainly outside the scope of coverage provided by Shelter to Lira, and public policy strictly prohibits an individual from insuring against such liability, no claim can exist against Shelter for a breach of good faith when Lira's only claimed damages are the punitive damages awarded against him in the underlying suit." *Lira*, 903 P.2d at 1149. The majority affirms. Maj. op. at 515, 518. Because Lira's claim is in tort and the award of punitive damages was the direct result of Shelter's bad faith breach of its obligations to Lira, I would hold that Lira can recover the damages awarded to him by the jury in this case.

## II.

This case exposes the tension that exists between an insurer's duty to act in good faith toward its insured in defending against a third party claim and the public policy that punitive damages should be absorbed by the wrongdoer without the benefit of insurance protection.

We addressed the nature and elements of a claim of bad faith breach of an insurance contract in *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984). Such a claim is based in tort. *Id.* at 1140. The duty upon which the claim is predicated is an implied duty of good faith and fair dealing "grounded upon the special nature of the insurance contract and the relationship which exists between the insurer and the insured." *Id.* at 1141. We explained in *Trimble* that the motivation of an insured in entering into an insurance contract is "to obtain some measure of financial security and protection against calamity, rather than to secure commercial advantage." *Id.* The refusal of an insurer to pay valid claims without justification "defeats the expectations of the insured and the purpose of the insurance contract." *Id.* Accordingly, a duty must be imposed on the insurer to act in good faith towards its insured. *Id.* We described the nature of the relationship between insurer and insured as quasi-fiduciary, a characterization particularly apt "when handling claims of third persons that are brought against the insured." *Id.* This is so because under the insurance contract, "the insurer retains the absolute right to control the defense of actions brought against the insured, and the insured is therefore precluded from interfering with the investigation and negotiation for settlement." *Id.* Based on the nature of the relationship and the resulting duty of the insurer to the insured, we held in *Trimble* that "the standard of conduct of an insurer in relation to its insured in a third party context must be characterized by general principles of negligence." *Id.* at 1142. The test for breach of an insurer's duty of good faith and fair dealing is "one of reasonableness under the circumstances," a standard "akin to that of negligence." *Id.*

---

**1.** The majority acknowledges, with seeming reluctance, that the jury's finding that Shelter acted in bad faith is not at issue here. Maj. op. at 516 n. 4. Nonetheless, the majority chooses to set forth selective evidence and its own conclusions in an apparent effort to cast doubt on the correctness of the jury's finding. *Id.* at 515–16, 516 n. 4.

The application of this standard presents difficulties in circumstances involving a claim for both compensatory damages, which the insurer is obligated to cover within policy limits, and punitive damages, for which the policy provides no coverage. As the court of appeals held in the present case, "the law in Colorado imposes a duty on the insurer fairly to consider the insured's interests and potential personal liability in addition to its own interests when negotiating settlements." *Lira,* 903 P.2d at 1150 (citing *Bailey v. Allstate Ins. Co.,* 844 P.2d 1336 (Colo.App. 1992)).[2] I would approve that duty standard.

Damages for breach of such a duty are governed by principles of tort law. In a tort action, a plaintiff is allowed to recover all damages that are the natural and probable result of the tortious act. *E.g., Thompson v. Tartler,* 166 Colo. 247, 255, 443 P.2d 365, 369 (1968); *Cooley v. Big Horn Harvestore Systems,* 767 P.2d 740, 745 (Colo.App.1988), *aff'd* 813 P.2d 736, 749–50 (Colo.1991). In an action for bad faith breach of an insurance contract, an insured "is entitled to recover damages based upon traditional tort principles of compensation for resultant injuries actually suffered ... rather than upon concepts derived from contract law." *Farmers Group, Inc. v. Trimble,* 658 P.2d 1370, 1375 (Colo.App.1982), *aff'd* 691 P.2d at 1142. In the present case the jury found that the punitive damages assessed against Lira in the underlying action were caused by Shelter's breach of its duty of good faith and fair dealing.

In comparable circumstances the Eighth Circuit Court of Appeals upheld an award to compensate a defendant in a bad faith breach of insurance contract action for the punitive damages awarded against her in the underlying litigation. *Carpenter v. Automobile Club Interinsurance Exchange,* 58 F.3d 1296, 1302–03 (8th Cir.1995). *Carpenter* involved an automobile accident and a subsequent settlement offer that the insurance company rejected even though it fell within the applicable policy limits. *Id.* at 1298–1299. At the personal injury claim trial, the jury returned a punitive damages award against the insured. *Id.* at 1299. The insurance contract at issue excluded coverage for punitive damages awards. *Id.* The insured party sued the insurer for negligence and bad faith in failing to settle the personal injury claim, and received a jury award for an amount that included compensation for the punitive damages awarded in the underlying action. *Id.* at 1299–1300. On review, the Eighth Circuit Court of Appeals held that the insured "is entitled to be made whole, which necessarily requires her to recover the amount of the punitive damages [awarded in the underlying action]." *Id.* at 1302; *see also id.* at 1303 ("[The insured] cannot be made whole unless she is given the opportunity to recover the entire amount of the judgments obtained against her in the underlying state court action, including the punitive damages awards."). I agree with the Eighth Circuit's conclusion in *Carpenter. Id.* at 1302–03. I would resolve the present case in the same manner.

### III.

The majority holds, however, that consequential loss in the form of punitive damages awarded against the insured in the underlying action cannot be recovered because the insurance contract does not cover punitive damages, maj. op. at 516, 517, and because public policy would be violated by allowing the burden of such damages to fall on the insurer and not the one whose conduct re-

---

**2.** The Tenth Circuit Court of Appeals set forth such a standard of conduct in more detail in *Magnum Foods, Inc. v. Continental Cas. Co.:*

We hold that here, where both compensatory and uninsurable punitive damages are sought, and [insurer] assumed the defense of the entire suit under the obligations of the policies, the presence of the punitive claim did not absolve [insurer] from its obligation of good faith in handling the entire case. That duty of good faith does not include settlement or a contribution to settlement by [insurer] of the uninsura-

ble punitive claim. We are convinced, however, that [insurer's] duty of good faith included working cooperatively with [insured] throughout in both defending and attempting to settle the entire case, with fair consideration given to [insured's] concerns because of its exposure to the uninsured punitive claim. The good faith duty of [insurer] thus required cooperative efforts by [insurer] with [insured] throughout to handle and settle the entire case.

36 F.3d 1491, 1506 (10th Cir.1994) (footnote omitted).

sulted in the punitive damages award, maj. op. at 517–18.

The first ground overlooks the fact that Lira's claim is not based on contract coverage but upon the tort of bad faith breach of the covenant of good faith and fair dealing arising from the insurance contract.[3] The majority argues that its "reasoning is in accord with Colorado case law and policy regarding punitive damages." Maj. op. at ——. It is not. For example, the Colorado Court of Appeals held in *Flickinger v. Ninth Dist. Prod. Credit Ass'n*, 824 P.2d 19, 24 (Colo.App.1991), that a bad faith tort claim is "separate from, and independent of, any claim under the policy itself." The court explained:

> We agree with plaintiff that his tort claim, based upon [insurer's] alleged bad faith, is not a claim arising "under" the pertinent policy; it is, rather, a claim that exists independently from the liability imposed by the insurance contract. Hence, we conclude, contrary to the conclusion reached by the trial court, that a contractual time limitation upon the commencement of litigation cannot be applied to bar such a tort claim.

*Id.* at 24. Because an insurer's tort duty to act in good faith derives from the relationship created by the insurance contract, but the boundaries of that duty are not defined by explicit contractual obligations, this court has defined the damages measure for an insurer's bad faith breach in terms of traditional tort principles. *See Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 677 (Colo.1994). In the bad faith breach of insurance contract context of *Ballow v. PHICO Ins. Co.*, we rejected contractual standards in favor of the traditional tort measure of compensatory damages for injuries actually suffered, including emotional distress, and aimed simply "to make the injured party whole." *Id.; cf. Scognamillo v. Olsen*, 795 P.2d 1357, 1360 (Colo.App.1990) (In legal malpractice fiduciary context, "the amount of damages is generally the amount of the judgment entered against the plaintiff in the underlying case," including any punitive damages.).

The majority's second ground, *i.e.*, a public policy against shifting the burden of punitive damages from the wrongdoer to the insurer, fails to take into account that only in circumstances where an insurer *in bad faith* fails to achieve a settlement that would relieve the wrongdoer of any liability for punitive damages will the insurer become obligated for the loss resulting from a punitive damages award against its insured. No party suggests that public policy precludes the settlement of a punitive damages claim that results in insulation of an insured from liability for such damages. This being the case, when such a settlement is not achieved as a consequence of *bad faith* breach of an insurer's duty of good faith and fair dealing, there is no reason that the insurer should not bear the consequences of a resulting punitive dam-

---

3. The flaw in the majority's reasoning that absence of insurance contract coverage for punitive damages prevents recovery of underlying punitive damages awards in a tort action for bad faith breach of insurance contract is further exemplified by the majority's acknowledgment that in such a tort action an insurer may become liable "for an award of damages in excess of the policy limits." Maj. op. at 517. Awards in excess of policy limits are by definition not within the terms of an insurance contract. The majority's reasoning, therefore, is logically insupportable in acknowledging on the one hand that damages for judgments in excess of policy limits can be recovered in tort actions for bad faith breach of an insurance contract, whereas damages to compensate for punitive damages judgments are not because they "are expressly precluded by the underlying contract." *See* maj. op. at 517.

The rationale for allowing recovery of liability judgments in excess of policy limits in bad faith breach of insurance contracts cases has been explained by the Tenth Circuit Court of Appeals:

> The insured's interest will almost always favor settlement, even up to policy limits, since the insured has nothing to gain and much to lose by litigating rather than settling. Conversely, if the claimant's settlement demand is close to the policy limits, the insurer will be inclined to go to trial, since doing so will not expose it to liability greater than the cost to settle the case. The "equal consideration" requirement prohibits the insurer from taking a gamble that only its insured stands to lose. In order to avoid such a result, an insurer that breaches its duty to consider settlement offers in good faith may be held liable for the entire judgment obtained against the insured, regardless of policy limitations.

*Magnum Foods, Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1504 (10th Cir.1994) (citations and footnote omitted).

ages award against its insured. Indeed, such a result promotes the public policy of encouraging good faith and fair dealing by insurers, who control the defense of actions brought against their insureds.

The majority, however, relies on the reasoning of the New York Court of Appeals in *Soto v. State Farm Ins. Co.*, 83 N.Y.2d 718, 613 N.Y.S.2d 352, 635 N.E.2d 1222 (1994), which held as a matter of public policy that notwithstanding an insurer's breach of the duty of good faith and fair dealing, and no matter how egregious the insurer's conduct, the consequence of a punitive damages award against an insured can never be transferred to the insurer. *See also Magnum Foods Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1506–07 (10th Cir.1994) (although insurer has duty to act in good faith in handling the entire case and to work cooperatively with insured in defending and attempting to settle the entire case, damages for breach of that duty do not extend to punitive damages sustained by insured as a result of the breach). The court in *Soto* held that "[w]here an insurer has acted in bad faith in relation to an available pretrial settlement opportunity, it is guilty only of placing its insured at risk that a jury will deem him or her so morally culpable as to warrant the imposition of punitive damages." *Soto,* 613 N.Y.S.2d at 355, 635 N.E.2d at 1225. Essentially, *Soto* reflects a qualitative judicial judgment that the insurer's bad faith is less blameworthy than the actions of the insured upon which the punitive damages award is predicated and that the insured must always bear the burden of punitive damages notwithstanding any loss of opportunity to avoid them as a consequence of an insurer's bad faith. *See* maj. op. at 517–18 (quoting from *Soto,* 613 N.Y.S.2d at 355, 635 N.E.2d at 1225).

I would reach a contrary judgment in light of the absence of any public policy prohibiting settlement of punitive damages claims and the fact that the insurer has control of the litigation and settlement. The majority's reasoning in effect absolves the insurer, which controls the litigation, from any need to take into account the insured's interests in avoiding a judgment for punitive damages, a central concern of the insured. *See* maj. op.

at 516–17. The better approach, in my opinion, would be to follow the reasoning of the Eighth Circuit Court of Appeals in *Carpenter,* 58 F.3d at 1302–03, and hold that in a tort action for bad faith breach of an insurance contract, as in any other tort action, the insured may recover all damages that result from the breach, including damages resulting from a lost opportunity to settle a claim for punitive damages.

Contrary to the majority's contention, maj. op. at 518, such a rule would not "force insurers to settle cases involving punitive damages in order to avoid liability for the same punitive damages in subsequent bad faith actions." Nor would it violate the principle, with which I agree, that insurers have no absolute duty to settle in order to protect their insureds from punitive judgments. Maj. op. at 518; *see Zieman Mfg. Co. v. St. Paul Fire & Marine Ins. Co.*, 724 F.2d 1343, 1346 (9th Cir.1983). Rather, such a rule would simply require an insurer to consider fairly the insured's interests and potential personal liability in addition to its own interests when negotiating settlements. No less should be required of the insurer, which has control of the litigation and the potential settlement of the case on behalf of the insured.

## IV.

The trial court in this case appropriately presented the insured's claims to the jury as tort claims, with damages measured as "actual damages ... in an amount which will reasonably compensate the plaintiff for his damages and losses if any." *See* jury instructions twelve, thirteen, and eighteen. In doing so, the trial court properly qualified an insurer's good faith tort obligation by noting that "[a]n insurer does not have an absolute duty to settle a claim, merely to avoid the risk of punitive damages." Jury instruction sixteen. Despite this qualification, the jury determined that Shelter acted in bad faith, and awarded Lira an amount sufficient to compensate him for the punitive damages assessed against him in the underlying action. For the reasons previously stated, I would reverse the judgment of the court of appeals overturning that award and would

direct reinstatement of the judgment entered on the jury verdict. I therefore respectfully dissent to the majority opinion.

KIRSHBAUM and MULLARKEY, JJ., join in this dissent.

