**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 12-4450

JARED WOLFE

v.

ALLSTATE PROPERTY &
CASUALTY INSURANCE COMPANY,
                                    Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No.:  4:10-cv-00800)
District Judge:  Honorable John E. Jones, III

Argued on April 27, 2015

Before:  RENDELL, JORDAN, and LIPEZ,* Circuit Judges

(Opinion filed:  June 12, 2015)

_____

* The Honorable Kermit V. Lipez, of the United States Court
of Appeals for the First Circuit, sitting by designation.

William P. Carlucci, Esquire **(ARGUED)**
Robert B. Elion, Esquire
Elion Wayne Grieco Carlucci & Shipman
125 East Third Street
Williamsport, PA 17701

Michael A. Dinges, Esquire
Dinges, Dinges & Waltz
1307 Sheridan Street
Williamsport, PA 17701

        Counsel for Appellee Jared Wolfe


Marshall J. Walthew, Esquire **(ARGUED)**
Sara B. Richman, Esquire
John L. Schweder, II, Esquire
Kristin Jones, Esquire
Pepper Hamilton
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103

        Counsel for Appellant Allstate Property &
        Casualty Insurance Co.

---

O P I N I O N

---

**RENDELL**, <u>Circuit Judge</u>

In this insurance dispute between appellant Allstate Property & Casualty Insurance Co. ("Allstate") and appellee Jared Wolfe, we are presented with the question of whether punitive damages awarded against an insured in a personal injury suit are recoverable in a later breach of contract or bad faith suit against the insurer. It is Pennsylvania's public policy that insurers cannot insure against punitive damages, and we therefore predict that the Pennsylvania Supreme Court will answer that question in the negative.

## I.   BACKGROUND

### A.  Underlying Personal Injury Lawsuit

On March 2, 2007, around 4:00 am, Karl Zierle finished his fifteenth or sixteenth beer for the night. At 11:00 am, Zierle was driving and rear-ended Wolfe. Zierle's blood alcohol level tested at 0.25%. Zierle also had three prior DUIs. Wolfe was injured in this accident, and he required treatment at the emergency room.

Zierle was insured by Allstate. Zierle's policy provided liability coverage up to $50,000, and the policy required Allstate to defend Zierle in suits by third parties arising out of automobile accidents. The policy stated that Allstate would "not defend an insured person sued for damages which are not covered by this policy." (App. 362.) Zierle's policy expressly excluded coverage for punitive damages.

Wolfe made an initial settlement demand to Allstate of $25,000, based on medical records provided to Allstate's

3

adjuster. Allstate valued Wolfe's claim at $1200 to $1400, and Allstate responded with a counteroffer of $1200. Wolfe rejected this offer, and neither party moved from those numbers.

Wolfe then filed suit against Zierle. Allstate informed Zierle that, because Wolfe's complaint did not indicate the extent of the damages he was claiming, the possibility remained that Zierle could face damages in excess of the $50,000 protection afforded by his policy. If the verdict did exceed the policy limit, Zierle was warned that he would be personally liable for the excess. Zierle was advised that he could hire an attorney at his own expense to cooperate with Allstate's counsel. Zierle did hire his own counsel, but that attorney was not actively involved in the case.

During discovery, Wolfe learned of the extent of Zierle's intoxication and amended the complaint to add a claim for punitive damages. Allstate wrote to Zierle about the potential for punitive damages and reminded him that those damages were not covered under his policy. Allstate advised Zierle that if a verdict was rendered against him on the punitive damages claim, Allstate would not pay that portion of the verdict, and he would be held responsible for it.

During pretrial settlement conferences, two separate Court of Common Pleas judges placed a settlement value of $7500 on the compensatory damage portion of the case. Wolfe now indicates that he would have settled the case for $7500, although he had never communicated this willingness to Allstate. Prior to trial, Wolfe reiterated the $25,000 demand and emphasized that Allstate's $1200 offer was too low. Allstate stated that it would not increase its $1200 offer

4

(despite having authority to offer $1400) unless Wolfe reduced his $25,000 demand. No further efforts at settlement were made by either party.

The case went to trial, and the jury awarded Wolfe $15,000 in compensatory damages and $50,000 in punitive damages. Allstate paid the $15,000 compensatory damages award, but not the $50,000 punitive damages award. Following the trial, in return for Wolfe's agreement not to enforce the punitive damages judgment against him personally, Zierle assigned his rights against Allstate to Wolfe.

### B. Procedural History

Wolfe, in Zierle's shoes, sued Allstate in the Pennsylvania Court of Common Pleas for Lycoming County, alleging breach of contract; bad faith conduct under Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371; and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. §§ 201-1 *et seq*.[1] Under the breach of contract claim, Wolfe sought to recover the $50,000 in punitive damages awarded against Zierle, interest on that award, and attorney's fees and costs for his later suit. Under section 8371, Wolfe sought an award of statutory interest, punitive damages, and an assessment of court costs. Allstate removed the case to the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. § 1441(b).

---

[1] The UTPCPL claim is not at issue before us on appeal.

5

Allstate filed two pretrial motions that are the subject of this appeal. The District Court denied both motions. Those orders are now before us for review. First, Allstate moved for summary judgment, characterizing Wolfe's claim as attacking Allstate's failure to settle because settlement would have avoided the potential for the punitive damages award. Allstate urged that, since it had no duty to indemnify for punitive damages, it could not be required to consider the potential for punitive damages when deciding whether to settle the compensatory claim. Allstate also argued that it should be granted summary judgment based on the fact that the jury's compensatory damages award was within the policy limits and Allstate paid that portion of the verdict. The District Court concluded that—separate and apart from the punitive damages aspect—Allstate had a fiduciary duty to negotiate a settlement in good faith on behalf of Zierle, and Allstate refused to increase its settlement offer over a period of years. Accordingly, a reasonable jury could find that Allstate was reckless and acted unreasonably during the settlement negotiations, amounting to bad faith. For the same reasons, the District Court denied summary judgment on the breach of contract claim.

Second, Allstate filed a motion in limine to exclude evidence related to the punitive damages awarded in the underlying trial. Allstate argued that Wolfe was barred as a matter of public policy from claiming the $50,000 punitive damages award as an item of damages, because indemnification for punitive damages was impermissible under Pennsylvania law. Allstate also argued that the evidence relating to the punitive damages award was irrelevant. The District Court denied the motion, because if a jury concluded that Allstate had failed to negotiate a

6

settlement of the compensatory damages portion of Wolfe's claim in good faith, then the $50,000 would be relevant as flowing from that failure. If Allstate had settled the claim, then punitive damages would not have been awarded. Therefore, the District Court reasoned, the $50,000 was relevant because it constituted damages resulting from Allstate's bad faith and breach of contract.

After trial, the jury returned a verdict in favor of Wolfe. The jury found that Allstate had violated Pennsylvania's bad faith statute and breached its contract with Zierle. The jury awarded no compensatory damages and $50,000 in punitive damages.

Allstate appealed from these orders and also claimed on appeal that Wolfe lacked standing because Wolfe's claim was based on an impermissible assignment of Zierle's rights. Because there were conflicting decisions in Pennsylvania and federal courts concerning the assignability of a bad faith claim brought under section 8371, we certified that question to the Pennsylvania Supreme Court, which granted our petition for certification. The Pennsylvania Supreme Court concluded that "the entitlement to assert damages under Section 8371 may be assigned by an insured to an injured plaintiff and judgment creditor such as Wolfe." *Allstate Prop. & Cas. Ins. Co. v. Wolfe*, 105 A.3d 1181, 1188 (Pa. 2014). Given the Pennsylvania Supreme Court's decision that Zierle's assignment was permissible, we now turn to our analysis of Allstate's remaining claims.

7

## II.    DISCUSSION[2]

Two issues are before us on appeal:  First, did the District Court err by permitting Wolfe to introduce the punitive damages award from the underlying suit as evidence of damages?  Second, did the District Court err by denying Allstate's motion for summary judgment and holding that Allstate had no duty to consider the potential for punitive damages when valuing the compensatory claim, since the compensatory damages award was within the policy limits, which Allstate paid to Wolfe in full?

It is undisputed that the substantive law of Pennsylvania applies here.  In the absence of a controlling decision by the Pennsylvania Supreme Court, we must predict how it would decide the questions of law presented in this case. *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45-46 (3d Cir. 2009).  "In predicting how the highest court of the state would resolve the issue, we must consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Id.* at 46 (quoting *Nationwide Mut. Ins. Co. v. Buffetta,* 230 F.3d 634, 637 (3d Cir. 2000)).[3]

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1332(a)(1); we have jurisdiction pursuant to 28 U.S.C. § 1291.

[3] The District Court did not conduct a prediction analysis. However, we can do a prediction analysis because, had it conducted such an analysis, our review of that analysis would be plenary. *Berrier*, 563 F.3d at 46 n.12.

## A. Motion in Limine

First, we address Allstate's arguments regarding whether the District Court committed error in denying the motion in limine. Wolfe persuaded the District Court to admit evidence of the punitive damages award because, if Allstate had acted in accordance with its contractual duty and negotiated in good faith to settle Wolfe's claim against Zierle, the case never would have gone to trial, and the jury never would have awarded punitive damages against Zierle. Allstate argues that, by allowing Wolfe to present to the jury evidence of the punitive damages award in the underlying trial as damages in his current suit against Allstate, the District Court circumvented Pennsylvania's public policy against insuring punitive damages.

"We review a district court's evidentiary decisions for abuse of discretion. To the extent the challenge involves a legal inquiry, . . . our review is plenary." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 244 n.25 (3d Cir. 2013) (citation omitted). We must determine whether the earlier punitive damages award was properly considered an item of compensable damages in the later breach of contract action and, in so doing, determine the relevance of the earlier punitive damages award. We predict that the Pennsylvania Supreme Court would conclude that, in an action by an insured against his insurer for bad faith, the insured may not collect as compensatory damages the punitive damages awarded against it in the underlying lawsuit. Therefore, the punitive damages award was not relevant in the later suit and should not have been admitted.

9

Our prediction is a logical extension of Pennsylvania's policy regarding the uninsurability of punitive damages. It is Pennsylvania's longstanding rule that a claim for punitive damages against a tortfeasor who is personally guilty of outrageous and wanton misconduct is excluded from insurance coverage as a matter of law. *See Butterfield v. Giuntoli*, 670 A.2d 646, 654 (Pa. Super. Ct. 1995). The Pennsylvania Superior Court, in *Esmond v. Liscio*, 224 A.2d 793, 799 (Pa. Super. Ct. 1966), held that "public policy does not permit a tortfeasor . . . to shift the burden of punitive damages to his insurer." This rule is based on the view that punitive damages are not intended as compensation. "They are, rather, a penalty, imposed to punish the defendant and to deter him and others from similar 'outrageous' conduct." *Id.*[4] "[S]ocially irresponsible drivers" who are "guilty of reckless and grossly offensive conduct on the highways" should not be allowed to escape the "personal punishment" of punitive damages. *Id.* "To permit insurance against the sanction of punitive damages would be to permit such offenders to purchase a freedom of misconduct altogether inconsistent with the theory of civil punishment which such damages represent." *Id.*

Furthermore, shifting punitive damages to insurers would result in insurers pricing up policies to factor in drivers who behave egregiously. "[T]he delinquent driver must not be allowed to receive a windfall at the expense of purchasers

---

[4] *Esmond* has been cited with approval by the Pennsylvania Supreme Court for the proposition that "it is clear that punitive damages are not intended to compensate the plaintiff for his injuries." *Colodonato v. Consol. Rail Corp.*, 470 A.2d 475, 479 (Pa. 1983).

10

of insurance, transferring his responsibility for punitive damages to the very people—the driving public—to whom he is a menace." *Id.* (quoting *Nw. Nat'l Cas. Co. v. McNulty*, 307 F.2d 432, 442 (5th Cir. 1962)). Because Pennsylvania law prohibits insurers from providing coverage for punitive damages in order to ensure that tortfeasors are directly punished, we hold that Allstate cannot be responsible for punitive damages incurred in the underlying lawsuit. To hold otherwise would shift the burden of the punitive damages to the insurer, in clear contradiction of Pennsylvania public policy.

California, Colorado, and New York have similar prohibitions on the indemnification of punitive damages, and those states' highest courts have similarly held that an insured cannot shift to the insurance company its responsibility for the punitive damages in a later case alleging a bad faith failure to settle by the insurer. *See PPG Indus., Inc. v. Transamerica Ins. Co.*, 975 P.2d 652 (Cal. 1999); *Lira v. Shelter Ins. Co.*, 913 P.2d 514 (Colo. 1996); *Soto v. State Farm Ins. Co.*, 635 N.E.2d 1222 (N.Y. 1994).

In *Lira*, the Supreme Court of Colorado held that "in an action by an insured against his insurer for bad faith failure to settle, the insured may not collect as compensatory damages the punitive damages awarded against him in the underlying lawsuit." 913 P.2d at 516. Colorado's public policy prohibited an insurance carrier from providing coverage for punitive damages, and "[t]o allow the petitioner in this case to recover compensatory damages which derive from his own wrongful conduct undercuts the public policy of this state against the insurability of punitive damages." *Id.* at 517. The court noted:

11

The damages which are claimed to be "compensatory" in the instant case are none other than the punitive damages from the underlying case. The contract between the parties expressly precluded recovery for punitive damages incurred by the insured. The insured may not later utilize the tort of bad faith to effectively shift the cost of punitive damages to his insurer when such damages are expressly precluded by the underlying insurance contract.

*Id*. at 517.

The *Lira* court also concluded that "[a]n insurer who has not contracted to insure against its insured's liability for punitive damages had no duty to settle the compensatory part of an action in order to minimize the insured's exposure to punitive damages." *Id.* at 516.[5] "Thus, if the insurer has no

---

[5] The *Lira* court cites *Magnum Foods, Inc. v. Continental Casualty Co.*, 36 F.3d 1491, 1506 (10th Cir. 1994), as support for this proposition. The cited portion of *Magnum Foods* focuses on the insurer's duty of good faith where uninsured punitive damages are present, rather than on whether those punitive damages are compensable in a later bad faith lawsuit against the insurer. *Magnum Foods* as a whole, however, supports our view on the question of whether punitive damages are appropriately considered in calculating the compensatory damages. The United States Court of Appeals for the Tenth Circuit concluded that "there was error in the compensatory damages award ($750,000) on the bad faith claim because it was based . . . on consideration of the $600,000 amount that Magnum paid to settle the punitive

12

contractual duty to indemnify the insured for punitive damages, the insurer has no tort duty to settle in good faith with regard to punitive damages." *Id.* at 517.

In *PPG Industries*, the California Supreme Court held that an insurer's breach of the covenant of good faith and fair dealing in failing to accept a settlement offer within policy limits was not the proximate cause of a punitive damages award. Instead, the punitive damages award proximately resulted from the insured's own intentional misconduct— failing to follow industry safety standards in installing windshields—and so punitive damages were not recoverable from the insurer. The court was convinced that there were two causes of the punitive damages award:  the insurance company's alleged negligence in failing to settle the third party lawsuit, and "the insured's own intentional and egregious misconduct in installing the windshield." 975 P.2d at 655. Only the former involved the insurer.

The court was persuaded that California public policy precluded an insured from shifting the obligation to pay punitive damages to its insurer. "To require [the insurer] to make good the loss [the insured] incurred as punitive damages in the third party lawsuit would impose on [the insurer] an obligation to indemnify, a violation of the public

damage award entered against it in the state court suit. This in effect shifted Magnum's punitive liability to the insurer which, in the circumstances of this case, violated Oklahoma public policy." *Id.* at 1507. The Tenth Circuit required a new trial on the bad faith claim, where Magnum could seek compensatory damages based on injury other than the $600,000 payment. This is the same result we reach here.

13

policy against indemnification for punitive damages." *Id.* at 658. The California Supreme Court also explained that "the purposes of punitive damages . . . are to punish the defendant and to deter future misconduct by making an example of the defendant." *Id.* at 656. Allowing the insured to shift responsibility for its wrongdoing to the insurance company, which "surely will pass to the public its higher cost of doing business," would "defeat the public policies of punishing the intentional wrongdoer for its own outrageous conduct and deterring it and others from engaging in such conduct in the future." *Id*. at 657.

In agreement with Colorado and California, the New York Court of Appeals in *Soto* held that "the punitive damages awarded against an insured in a civil suit are not a proper element of the compensatory damages recoverable in a suit against an insurer for a bad-faith refusal to settle." 635 N.E.2d at 1225. Although the insureds' cause of action in *Soto* was based on bad faith liability due to an excess judgment, the court's rationale aligns with *Lira* and *PPG Industries*. New York's public policy precluded indemnification for punitive damages, so the *Soto* court concluded that permitting recovery for excess civil judgments attributable to punitive damages awards would be unsound public policy. Such a recovery would improperly focus on the insurer's allegedly wrongful act in refusing to settle and would minimize the insured's own blameworthy conduct. "Regardless of how egregious the insurer's conduct has been, . . . any award of punitive damages that might ensue is still directly attributable to the insured's immoral and blameworthy behavior." *Id.* The *Soto* court precluded the recovery of punitive damages in order to preserve the "condemnatory and retributive character of punitive damage

14

awards." *Id.* These three cases, all from states that prohibit insuring punitive damages, buttress our conclusion that Allstate cannot be held responsible for the punitive damages award against Zierle.

Wolfe argues that Allstate breached its duty of good faith by unreasonably refusing to negotiate. Because Allstate breached its duty of good faith and fair dealing, under Wolfe's theory, Allstate would become liable for *all* the consequential damages of that breach—including the punitive damages award of $50,000. Wolfe relies on the logic of this argument, but does not cite any relevant case law to support his assertions. Although not cited by Wolfe, *Carpenter v. Automobile Club Interinsurance Exchange*, 58 F.3d 1296 (8th Cir. 1995), appears to support his position. The United States Court of Appeals for the Eighth Circuit rejected the insurer's argument that due to the exclusion of punitive damages, the plaintiff should be barred from recovering those damages:

> We acknowledge that the policy excluded coverage for punitive damages, yet we hold that Carpenter is entitled to be made whole, which necessarily requires her to recover the amount of the punitive damages awarded . . . in the underlying state court action. Those damages are part of the *consequential* damages flowing from AAA's alleged bad faith and negligence in handling Carpenter's insurance claims.

*Id.* at 1302. The Eighth Circuit reached this conclusion by interpreting Arkansas law, which stated that "[w]here an insurer, either through negligence or bad faith, fails to settle a claim against its insured within the policy limits, when it is possible to do so, such insurer is liable to the insured *for any*

15

*judgment recovered against him (or her) in excess of such policy limits.*" *Id.* at 1303 (quoting *McChristian v. State Farm Mut. Auto. Ins. Co.,* 304 F. Supp. 748, 750 (W.D. Ark. 1969)) (alteration in original).  Without referencing public policy, the Eighth Circuit reasoned that the plaintiff could not be made whole without recovery of the entire amount of the judgments obtained in the underlying state court action, including punitive damages.  *Id.*  Because the Eighth Circuit did not consider Arkansas's public policy regarding punitive damages in making this determination, we do not find the *Carpenter* court's literal reading of Arkansas law to be persuasive as to what the Pennsylvania Supreme Court would conclude.

In light of Pennsylvania's public policy against insuring punitive damages, which emphasizes personal responsibility and deterrence, we conclude that the insured cannot shift the punitive damages to its insurer.  Because the $50,000 punitive damages award is not a compensable item of damages in this case, the District Court erred in allowing evidence of that award to be presented to the jury.  The District Court here concluded that the $50,000 punitive damages award flowed from Allstate's failure to negotiate a settlement in good faith.[6]  Accordingly, the District Court

---

[6] Wolfe argues that the federal jury's award of $50,000 in punitive damages had no relationship to the $50,000 punitive damages award in the state personal injury suit.  Rather, he asserts, the fact that both awards are $50,000 is a "coincidence."  Although we cannot speak for the federal jury as to why it chose to award $50,000 in punitive damages, we are persuaded that the record shows more than mere

16

viewed Wolfe as seeking compensation, not indemnification. However, we conclude that punitive damages awarded in the underlying case are not properly considered compensable damages in Wolfe's breach of contract claim against Allstate.[7] The District Court's ruling effectively shifted Zierle's liability for punitive damages to Allstate, which violated Pennsylvania's public policy. Because the punitive damages award is not a compensable item of damages as a matter of law, and because no other reason has been suggested for why the earlier punitive award would be relevant in a case like this, it is not relevant evidence under Federal Rules of Evidence 401 and 402.

It follows from our reasoning that an insurer has no duty to consider the potential for the jury to return a verdict for punitive damages when it is negotiating a settlement of the case. To impose that duty would be tantamount to

coincidence for why the jury awarded the same amount here as the earlier punitive damages award.

[7] Because we exclude this evidence as a matter of Pennsylvania's public policy, we need not reach Allstate's argument that the District Court erred in concluding that the punitive damages flowed from Allstate's failure to settle, rather than from Zierle's egregious conduct and the jury's verdict punishing him for that conduct. This question of proximate cause is not necessary to our holding because, regardless of whether the punitive damages in the underlying case are "caused" by the insured's egregious conduct or the insurer's failure to settle, it makes no difference to the outcome. Those punitive damages are not recoverable in a later suit against the insurer, as a matter of public policy.

making the insurer responsible for those damages, which, as we have discussed, is against public policy. *See Zieman Mfg. Co. v. St. Paul Fire & Marine Ins. Co.*, 724 F.2d 1343, 1346 (9th Cir. 1983) (affirming the conclusion by the district court that "[t]he proposition that an insurer must settle, at any figure demanded within the policy limits, an action in which punitive damages are sought is nothing short of absurd. The practical effect of such a rule would be to pass on to the insurer the burden of punitive damages in clear violation of California statutes and public policy"); *see also Wardrip v. Hart*, 28 F. Supp. 2d 1213, 1215-16 (D. Kan. 1998) (same). As a result, Allstate is entitled to a new trial, at which Wolfe may not introduce evidence relating to $50,000 in punitive damages, although he may seek compensatory damages based on injury other than the $50,000 punitive damages award.

## B. Summary Judgment[8]

We now turn to Allstate's other argument on appeal—namely, that the District Court erred by denying Allstate's motion for summary judgment on the breach of contract and statutory bad faith claims. Under Pennsylvania law, bad faith by an insurance company can give rise to two separate causes

---

[8] We apply a plenary standard of review to our review of a denial of summary judgment. In doing so, we assess the record using the same summary judgment standard that guided the District Court. *Rivas v. City of Passaic*, 365 F.3d 181, 193 (3d Cir. 2004). To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

of action:  a breach of contract action for violation of an insurance contract's implied duty of good faith, and a statutory action under the terms of Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371.  Wolfe pursued both claims before the District Court.

Allstate urges that, once the punitive damages award is removed from the equation, the District Court should have granted summary judgment in its favor, so that a new trial is unnecessary.  It urges that an insurer does not breach its duty or act in bad faith, as a matter of law, if it does not settle and the jury awards a compensatory judgment within the policy limits, because there is no harm to the insured.[9]  We do not believe that Allstate's argument, even if successful in its entirety, would necessarily result in a judgment for Allstate.  We conclude that the District Court correctly denied the summary judgment motion on both claims—for breach of contract and statutory bad faith—because removing the $50,000 punitive damages award from the damages sought for these claims does not require entry of judgment in favor of Allstate.

---

[9] Counsel for Allstate urged at oral argument that an excess verdict was necessary in order to have a contractual or bad faith claim.  We know of no case that so holds.  And we note that the District Court for the Western District of Pennsylvania has predicted that the Pennsylvania Supreme Court would hold that entry of an excess verdict is *not* necessary for a third party bad faith claim under Pennsylvania common law.  *See McMahon v. Med. Protective Co.*, No. 13-911, --- F. Supp. 3d ----, 2015 WL 1285790, at *12 (W.D. Pa. Mar. 20, 2015).

### 1. Breach of Contract Claim

Pennsylvania law recognizes a claim in contract for an insurer's breach of its fiduciary obligations to its insured, and an insured's right to recover compensatory damages under that claim for injuries sustained as a result of that breach. *Cowden v. Aetna Cas. & Sur. Co.*, 134 A.2d 223, 227 (Pa. 1957). In defining what this duty of good faith entails, the Pennsylvania Supreme Court held that the insurer must "consider in good faith the interest of the insured as a factor" in deciding whether to settle a claim. *Id.* at 228. Evidence showing only "bad judgment" is insufficient for liability and "*bad faith, and bad faith alone* was the requisite to render the defendant liable." *Id.* at 229. An insurer's bad faith must be proven by "clear and convincing evidence." *Id.* Under *Cowden* and its progeny, if an insurer breaches the contractual duty of good faith, the insured is entitled to recover "the known and/or foreseeable compensatory damages of its insured that reasonably flow from the bad faith conduct of the insurer." *Birth Ctr. v. St. Paul Cos.,* 787 A.2d 376, 379 (Pa. 2001). This cause of action is also known as a common law bad faith action.

Wolfe's breach of contract claim sought recovery of the $50,000 punitive damages award; interest on the $50,000 punitive damages award; and attorney's fees and costs. By removing the $50,000 award from consideration, we remove all compensatory damages that Wolfe seeks, based on the statements in his complaint. However, this does not require summary judgment in favor of Allstate on this claim.

Under Pennsylvania law, if a plaintiff is able to prove a breach of contract but can show no damages flowing from the

20

breach, the plaintiff is nonetheless entitled to recover nominal damages. *Thorsen v. Iron & Glass Bank*, 476 A.2d 928, 931 (Pa. Super. Ct. 1984); *see also Scobell Inc. v. Schade,* 688 A.2d 715, 719 (Pa. Super. Ct. 1997). "A grant of summary judgment on the sole basis of absence of provable damages, therefore, is generally improper." *Thorsen*, 476 A.2d at 931. Federal courts applying Pennsylvania law have agreed with the impropriety of summary judgment in such a situation. *See Haywood v. Univ. of Pittsburgh*, 976 F. Supp. 2d 606, 645 (W.D. Pa. 2013) ("Haywood's motion for summary judgment must, therefore, be denied because the University, if it proves the other elements of a claim for breach of contract, may be entitled to nominal damages."). Therefore, even without compensatory damages, an insurer can be liable for nominal damages for violating its contractual duty of good faith by failing to settle. Accordingly, we affirm the District Court's denial of the motion for summary judgment as to the breach of contract claim.

## 2. Bad Faith Claim Under Section 8371

Pennsylvania also provides a statutory remedy for bad faith in section 8371. If an insurer has "acted in bad faith toward the insured," a court may:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371.  Section 8371 does not provide for the award of compensatory damages, which, if sought, must be recovered based on other theories.  *See Birth Ctr.*, 787 A.2d at 386.

This statute was enacted in response to a 1981 Pennsylvania Supreme Court decision holding that there was no common law "bad faith" cause of action for a plaintiff whose insurance company wrongfully refused to pay a claim under an insurance policy.  *See generally D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co.*, 431 A.2d 966 (Pa. 1981).  In 1990, the Pennsylvania legislature enacted section 8371, which created a new cause of action for bad faith on the part of the insurer.  *See Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 529 (3d Cir. 1997) (describing history).

Section 8371 does not define "bad faith," but we have predicted that the Pennsylvania Supreme Court would follow the definition of bad faith, and test for liability, set out by the Pennsylvania Superior Court in *Terletsky v. Prudential Property & Casualty Insurance Co.*, 649 A.2d 680 (Pa. Super. Ct. 1994).  *See Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005).  *Terletsky* defined "bad faith" as

> any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent.  For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

649 A.2d at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990)). To recover under section 8371, a plaintiff must show by clear and convincing evidence that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim. *Id*.

The removal of the $50,000 as compensatory damages does not require summary judgment in favor of Allstate on the bad faith claim under section 8371. Section 8371 "sets forth no . . . requirement to be entitled to damages for the insurer's bad faith." *Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1177 (Pa. Super. Ct. 2012). In *Berg*, the court stated:

> [T]he focus in section 8371 claims cannot be on whether the insurer *ultimately* fulfilled its policy obligations, since if that were the case then insurers could act in bad faith throughout the entire pendency of the claim process, but avoid any liability under section 8371 by paying the claim at the end. . . . [T]he issue in connection with section 8371 claims is the *manner* in which insurers discharge their duties of good faith and fair dealing during the pendency of an insurance claim, not whether the claim is eventually paid.

*Id.* at 1178 (citing *Toy v. Metro. Life Ins. Co.,* 928 A.2d 186, 199 (Pa. 2007)). The policy behind section 8371—deterring insurance companies from engaging in bad faith practices—is furthered by allowing a statutory bad faith claim to proceed even where the insured has alleged no compensatory damages resulting from that conduct. *See March v. Paradise Mut. Ins.*

23

*Co.*, 646 A.2d 1254, 1256 (Pa. Super. Ct. 1994) (explaining that section 8371 "was promulgated to provide additional relief to insureds and to discourage bad faith practices of insurance companies"). Accordingly, removal of the $50,000 punitive damages award as damages in this suit has no bearing on the damages that can be awarded under the statutory bad faith claim.[10]

Therefore, Wolfe does not need compensatory damages to succeed on his statutory bad faith claim, which only permits recovery of punitive damages, interest, and costs. Accordingly, we affirm the District Court's denial of the motion for summary judgment as to the bad faith claim,

---

[10] Recovery on Wolfe's breach of contract claim and his statutory bad faith claim are entirely independent of one another. Section 8371 allows punitive damages awards even without any other successful claim. *See Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*, 399 F.3d 224, 235 (3d Cir. 2005); *see also March*, 646 A.2d at 1256 ("[Because] claims under section 8371 are separate and distinct causes of action and as the language of section 8371 does not indicate that success on the contract claim is a prerequisite to success on the bad faith claim, . . . an insured's claim for bad faith brought pursuant to section 8371 is independent of the resolution of the underlying contract claim."); *accord Margolies v. State Farm Fire & Cas. Co.*, 810 F. Supp. 637, 642 (E.D. Pa. 1992). Furthermore, Wolfe's claim under section 8371 does not affect his ability to obtain compensatory damages, if they exist, under a breach of contract claim. "The statute does not prohibit the award of compensatory damages. It merely provides an additional remedy and authorizes the award of additional damages." *Birth Ctr.*, 787 A.2d at 386.

because Wolfe's inability to collect the $50,000 as compensatory damages does not preclude recovery on that claim as a matter of law.

## III.   CONCLUSION

We will vacate the District Court's judgment resulting from the jury's verdict as to the breach of contract claim and the bad faith claim under section 8371.  We will reverse the District Court's ruling denying the motion in limine and remand for a new trial on both these claims, at which Wolfe will be barred from introducing evidence of the $50,000 punitive damages award.  We will affirm the District Court's denial of summary judgment on both the breach of contract and statutory bad faith claims.