NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3396
_____

WASHINGTON STREET, LLC,

Appellant

v.

NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 2-21-cv-04374)
District Judge:  Honorable Joshua D. Wolson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 11, 2023

Before:   JORDAN, BIBAS and PORTER, *Circuit Judges*

(Filed: September 13, 2023)
_____

OPINION[*]
_____

JORDAN, *Circuit Judge.*

Washington Street, LLC ("Washington Street") appeals a District Court order

granting summary judgment to Nationwide Property and Casualty Insurance Company

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

("Nationwide"), which ended Washington Street's claims that Nationwide proceeded in bad faith in delaying claim payments following a fire that damaged Washington Street's property. We will affirm.

## I.    BACKGROUND

In July 2019, a fire caused by a tenant's negligence destroyed an apartment building owned by Washington Street. Washington Street promptly submitted a claim for recovery to its insurer, Nationwide. Some six weeks later, in September 2019, Nationwide provided an initial claim estimate and payment, after Washington Street's attorney complained about the pace of the investigation. That initial payment ($376,342.95) was, as Nationwide acknowledged, incomplete, as it was subject to change based on additional repairs or damages found. In October 2019, Washington Street provided estimates for repairs not covered in Nationwide's initial report. Nationwide reviewed those estimates and hired a consultant to review the entire project.[1] The consultant completed his assessment in January 2020, estimating the total cost of repairs to be $635,898.86, after which Nationwide paid an additional $208,555.91, an amount the parties accepted as bringing the total payments to $584,907.68.[2]

---

[1] In December 2019, Washington Street realized that, due to its insurance agent's error, its policy did not cover lost business income. Washington Street informed Nationwide of this error and Nationwide took more than eleven months to process the policy reformation and credit Washington Street the $60,000 it was owed in business income loss. Washington Street's agent said, "this entire claim by far is the worst I've ever experienced." (App. at 1335.)

[2] The factual record contains these numbers (*see* App. at 571 ¶¶ 17-18; 937-40 ¶¶ 17-18; 1570) but $376,342.95 (the initial payment) plus $208,555.91 (the

2

Washington Street was dissatisfied with that amount and demanded an impartial appraisal of the total loss. Nationwide cooperated by hiring an appraiser. Washington Street also hired an appraiser, and the two appraisers appointed an "umpire" to resolve any disagreements.[3] In November 2020, the umpire entered an award for Washington Street: $859,670.03 for dwelling loss, $7,720.05 for business personal property, $35,306.40 for debris removal, and $74,200 for loss of income. The total amount exceeded Washington Street's policy limit of $854,700 for dwelling loss, $60,000 for business income, and $25,000 for debris removal, and Nationwide paid the full policy amount.

During the appraisal, on June 3, 2020, Nationwide filed a subrogation lawsuit against the tenant who had negligently caused the fire. The subrogation investigation began in July 2019, but Nationwide did not inform Washington Street of the lawsuit until January 14, 2021. Eventually, Nationwide obtained a settlement that resulted in Washington Street receiving an additional $15,000, an amount Washington Street described as "fair and acceptable." (*See* App. at 892, 1584.)

---

supplemental payment) equals $584,898.86, not $584,907.68, the small difference being in Washington Street's favor.

[3] After retaining its appraiser, Nationwide demanded that Washington Street "provide an itemized list of matters [it] intend[ed] to submit to policy appraisal[,]" and it threatened to refuse appraisal of unlisted items pursuant to its policy. (App. at 324.) Such a list was not a stated prerequisite to appraisal. After the joint appraisal began, Nationwide sent Washington Street's file to another claims professional, who continued to demand an itemized list, but the appraisal proceeded anyway, even though Washington Street's attorney refused Nationwide's demand.

Washington Street filed a bad faith insurance action under 42 Pa. Cons. Stat. § 8371, as well as a claim for common law breach of contract based on bad faith.[4] It alleged that Nationwide repeatedly and purposely delayed its insurance payouts and policy reformation, misrepresented the policy's appraisal prerequisites, and illegally initiated a subrogation action before Washington Street was made whole, all of which caused Washington Street severe economic harm.

After discovery, Nationwide moved for summary judgment and the District Court granted it. The Court held that Nationwide's handling of Washington Street's claim was "by no means a model of perfection" but it did not constitute bad faith. (App. at 1568-69.) Washington Street has timely appealed.

## II.    DISCUSSION[5]

Washington Street makes the same arguments here as it did in the District Court. It claims that Nationwide demonstrated bad faith by delaying six weeks to make its first partial payout, failing to make further estimates until Washington Street pressed for

---

[4] Washington Street, a Pennsylvania limited liability company, filed its suit in Pennsylvania state court, and Nationwide, an Ohio corporation, removed the case to the District Court. (App. at 393-96.)

[5] The District Court had jurisdiction under 28 U.S.C. §§ 1332 and 1441. We have jurisdiction pursuant to 28 U.S.C. § 1291. "To warrant summary judgment, the movant must show that, viewing the evidence in the light most favorable to the nonmoving party, 'there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)).

progress, hiring a building consultant for the alleged purpose of further delaying the process, making a still-deficient payment six months after the fire, knowingly misrepresenting its appraisal policy, delaying its policy reformation request, and filing its subrogation action prematurely. In light of the record, none of those allegations has enough support, in isolation or in the aggregate, to demonstrate bad faith, and the District Court did not err in so holding.

Pennsylvania provides a statutory remedy if an "insurer [acts] in bad faith toward the insured." 42 Pa. Cons. Stat. § 8371. To prevail on a bad faith claim, a plaintiff must demonstrate "by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). That "requires evidence so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 523 (3d Cir. 2012) (internal quotation marks omitted). "At the summary judgment stage, the insured's burden in opposing a summary judgment motion brought by the insurer is commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (internal quotation marks omitted). Consequently, to overcome a bad faith insurance claim, all an insurer defendant must do is present "evidence of a reasonable basis for [its] actions or inaction." *Gibson v. State*

5

*Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 191 (3d Cir. 2021). Delay is relevant in determining whether an insurer acted in bad faith, but "a long period of delay between demand and settlement does not, on its own, necessarily constitute bad faith." *Seto v. State Farm Ins. Co.*, 855 F. Supp. 2d 424, 430 (W.D. Pa. 2012) (internal quotation marks omitted).

Washington Street claims that "[f]rom July 14, 2019[, the date of the fire,] through August 13, 2019," Nationwide did not contact Washington Street. (Opening Br. at 22.) But that assertion does not consider that less than a month passed between those dates, and, as Washington Street admits, that the fire chief did not release the building for inspection for two to three weeks after the fire. Washington Street's complaints of an initial delay also ignore its own concession that Ruth Jones, its sole member, "spoke with [a Nationwide claims specialist] several times … in the days following the fire." (App. at 1424.) Nationwide promptly investigated Washington Street's claim, and its claims specialist visited the burned building soon after the site was deemed safe.

So too, Nationwide's delay of six weeks in providing the first payment appears reasonable. On August 26, 2019, the claims specialist wrote, "The fact is it is a large building and although I have spent days estimating, it has been a slow process." (App. at 76.) Nationwide's first payment included a detailed estimate of property damage that was admittedly underinclusive and left the door open for Washington Street to submit further estimates once repairs got underway. (*See* App. at 1082.) Washington Street did not initiate any repairs, however.

6

Next, Washington Street claims that "Nationwide, despite knowing that its initial estimate and payment was incomplete, failed to take any further action to attempt to complete its investigation and estimate." (Opening Br. at 26.) On the facts, however, that too does not appear unreasonable. The claims specialist believed that his estimate covered all apparent damage and that only demolition would reveal damage to hidden components like the HVAC system. (App. at 773-74.) That may have been incorrect,[6] but "bad judgment is not bad faith." *Northwestern*, 430 F.3d at 137 (internal quotation marks omitted). Once Washington Street's attorney sent the supplemental damage estimates, Nationwide's claims specialist attempted to synthesize them with his own, but, "[g]iven the nature of the quotes and the lack of progress," he determined that another building consultant was required. (App. at 1056.) Again, while that may have resulted in some inefficiency, the decision does not appear to be unreasonable.[7] The policy reformation delay came after Nationwide had already paid Washington Street $584,907.68, and it eventually agreed to reform the policy and paid Washington Street the full policy amount. As the District Court noted, "Nationwide probably could have been more diligent," but that doesn't mean that Nationwide's pace of review was

---

[6] Nationwide's building consultant did provide estimates for items missing from the claims specialist's report (e.g., HVAC system) to arrive at his $635,898.86 number. (*See* App. at 1246, 1327; 571 ¶ 19; 940 ¶ 19.)

[7] There is no basis on the record to show that the decision to hire the consultant was made in bad faith. The assertion that it was done for delay is conclusory.

unreasonable, much less that it showed disregard for Washington Street's contractual rights. (App. at 1577.)

Washington Street contends that Nationwide misrepresented its appraisal prerequisites by requiring "an itemized list" and warning that it would not appraise otherwise. (App. at 324.) But Washington Street concedes that the appraisal still took place and that Nationwide abided by the umpire's award, which ignored the itemized-list "requirement." As the District Court noted, "the maximum delay that Nationwide's request caused was six weeks from the appraisers' site visit to the day Washington Street refused to provide an itemized list." (App. at 1579.)

Finally, while Nationwide may have violated the made-whole doctrine, which requires that "an insured recover the full amount of its losses before an insurer may pursue recovery under its subrogation rights," *Pro. Flooring Co., Inc. v. Bushar Corp., Inc.*, 152 A.3d 292, 302 (Pa. Super. Ct. 2016), that in itself does not establish bad faith here. In fact, Washington Street does not show that the subrogation action prejudiced it or delayed the policy payouts; instead, Washington Street described the subrogation claim settlement as "fair and acceptable." (*See* App. at 1582, 1584.)

In sum, Washington Street has not shown by clear and convincing evidence – the applicable standard of proof – that Nationwide acted in bad faith in processing Washington Street's insurance claim.[8]

---

[8] For the same reasons, Washington Street's common law breach of contract claims fail. "Pennsylvania law recognizes a claim in contract for an insurer's breach of its fiduciary obligations to its insured, and an insured's right to recover compensatory

## III. CONCLUSION

Based on the foregoing, we will affirm the District Court's grant of summary judgment.

---

damages under that claim for injuries sustained as a result of that breach." *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 497 (3d Cir. 2015). As with statutory bad faith, however, "[e]vidence showing only 'bad judgment' is insufficient for liability" for common law breach of fiduciary obligations. *Id.* (citation omitted) Moreover, the District Court concluded that the record does not support Washington Street's claim of financial loss flowing from Nationwide's conduct. (App. at 1583-85.)