**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1589
_____

EILEEN M. GIBSON; ROBERT P. GIBSON, h/w

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY
                                        Appellant

_____

No. 20-1609
_____

EILEEN M. GIBSON; ROBERT P GIBSON, h/w
                                        Appellants
v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:18-cv-4919)

Magistrate Judge:  Honorable Timothy R. Rice
_____

Argued January 21, 2021

Before:  HARDIMAN and ROTH, *Circuit Judges*,
and PRATTER,* *District Judge*

(Opinion Filed: April 8. 2021)


Alfred V. Altopiedi          [ARGUED]
Donna A. Casasanto       [ARGUED]
902 Old Marple Road
Springfield, PA, 19064

Joseph M. Fioravanti
217 North Monroe Street
P.O. Box 1826
Media, PA 19063

*Counsel for Eileen M. Gibson and Robert P. Gibson*

Michael Saltzburg          [ARGUED]
Katherine C. Douglas      [ARGUED]
Sarah E. Crosley
Bennett Bricklin & Saltzburg
1500 Market Street, Center Square
32nd Floor

---

*       Honorable Gene E.K. Pratter, District Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Philadelphia, PA 19102

    *Counsel for State Farm Mutual Automobile Insurance Company*

Elizabeth M. Tarasi
Tarasi & Tarasi, P.C.
510 Third Avenue
Pittsburgh, PA 15219

    *Counsel for Amici the Pennsylvania Association for Justice in support of Appellees/Cross Appellants*

Bryan M. Shay
Jeffrey M. Brenner
Post & Schell, P.C.
Four Penn Center, 13th Floor
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103

    *Counsel for Amici the Pennsylvania Defense Institute in support of Appellant/Cross Appellee*

———————————

OPINION OF THE COURT
———————————

PRATTER, *District Judge*.

Underinsured motor vehicle coverage ("UIM") is designed to help defray the cost of an accident with an

uninsured or underinsured motorist. Although basic UIM coverage is for an amount equal to bodily injury limits set in the policy, an insured in Pennsylvania can reduce premium costs by opting for a lower amount of underinsured motorist coverage. To accomplish that, Pennsylvania law requires only that the insured make a "request in writing." 75 Pa. C.S. § 1734. The statute says little beyond that. But that silence speaks volumes. As we reiterate today, the statute means what it says: an insured can make that choice "in writing" in any writing as long as the choice is clear.

The question here is whether Eileen Gibson's three-page application for insurance with State Farm in which she opted for $100,000 in stacked UIM coverage for three cars and $250,000 in bodily injury coverage was sufficient to satisfy § 1734. At the time she signed the application, she did not also then sign an additional form acknowledging the lower coverage selection, a form which State Farm categorized as "required." She eventually signed this form and confirmed the chosen lower UIM coverage amount, but she did not actually sign this other paperwork until after she had been injured in a car accident.

Because we find that § 1734's minimal requirement of a "request in writing" was met here, we will reverse the Magistrate Judge's Order insofar as it granted the Gibsons' motion to mold the verdict to the higher amount of the bodily injury coverage instead of the lower optional $300,000 UIM coverage limits. But we will affirm the Order which denied the Gibsons' motion for reconsideration of the dismissal of their bad faith claim.

4

## I. BACKGROUND

The Gibsons previously had a GEICO auto insurance policy for $300,000 limits in stacked bodily injury coverage and $300,000 limits for underinsured motorist coverage. In late April 2016, Ms. Gibson signed a State Farm insurance application for bodily injury coverage of $250,000 but maintained $100,000 in stacked UIM coverage. Because the Gibsons insured three cars and the UIM insurance is "stacked," the total UIM coverage provided for in the application was $300,000. The State Farm agent presented Ms. Gibson with a three-page application at that time, and the third page included a signature block below language attesting that "the limits and coverages [in the application] were selected by me." Ms. Gibson signed the application, and the policy was issued effective April 22, 2016.

The last page of the pre-printed application referenced other documents, listed as "required" documents, including an acknowledgement of coverage selection form for UIM which again listed UIM coverage of $300,000. State Farm did not provide these additional forms to Ms. Gibson when she applied for insurance in April.

Soon after signing the application, Ms. Gibson was seriously injured in an accident. Roughly three weeks after her accident, the Gibsons returned to the State Farm office to sign the other documents referenced in her application. State Farm presented her with, among other things, an acknowledgement of coverage selection form. This form stated that UIM benefits "are available with limits up to the Liability Coverage limits for bodily injury." It further stated that the applicant "acknowledge[s] and agree[s] that I have been given the opportunity to purchase Underinsured Motor Vehicle

5

Coverage with limits up to my Liability Coverage limits for bodily injury but instead I select lower limits of $100,000 (per person)/$300,000 (per accident) in lieu of the higher limits made available to me." Ms. Gibson signed this form confirming her election of lower UIM limits (i.e., $300,000), as well as the other "required" documents in May 2016 which was post-accident. There is no evidence that she questioned, or that she objected in either April or May, to the documents she signed containing lower UIM coverage limits.

Following the accident, the Gibsons demanded coverage for injuries. Negotiations were unsuccessful. The Gibsons later sued State Farm for underinsured motorist coverage, breach of contract, and bad faith under 42 Pa. C.S. § 8371. The Gibsons' complaint demanded what they described as the maximum amount of UIM coverage—which the Gibsons alleged was $300,000.

State Farm successfully moved for partial summary judgment on the bad faith claim. The Magistrate Judge[1] found that State Farm "reasonably based its settlement offer" on the materials provided by the Gibsons. As a result, the court found that no reasonable juror could conclude that State Farm lacked a reasonable basis for failing to further investigate the Gibsons' claim. Because the Magistrate Judge found no facts establishing bad faith by State Farm, he entered summary judgment on this claim.[2]

---

[1] The Magistrate Judge presided by consent under 28 U.S.C. § 636(c).

[2] The Gibsons argue that the claim was not dismissed "with prejudice" on summary judgment. But at the hearing on

6

The parties proceeded to trial. The jury awarded the Gibsons $1,750,000 in damages. State Farm moved to mold the verdict to the UIM policy limit, arguing that the UIM policy limit was $300,000—which was the amount listed on the application and alleged by the Gibsons in their complaint. The Gibsons cross-moved to mold the verdict to $750,000—representing the $250,000 bodily injury limit in the policy stacked for three cars—on the basis that State Farm's application to elect a lower UIM policy limit did not comply with Pennsylvania law. This post-trial motion practice was the first time the Gibsons challenged State Farm's compliance with Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"). The Gibsons also moved for reconsideration of the Magistrate Judge's order granting partial summary judgment to State Farm on the bad faith claim as well as for an order to re-open discovery.

The Magistrate Judge granted the Gibsons' motion to mold the $1,750,000 verdict to the higher $750,000 limits on the grounds that Ms. Gibson did not validly elect the lower $300,000 UIM limits under Section 1734 of the MVFRL, 75 Pa Cons. Stat. §§ 1701 *et seq*. Because the Magistrate Judge found State Farm's reference in the application to "required" documents created ambiguity, the ambiguity was construed against State Farm. So, the Magistrate Judge concluded that Ms. Gibson was entitled to the higher default UIM coverage amount, rather than the lower limits she selected before and after the accident and for which she sought recovery in her complaint. The Magistrate Judge denied all other motions.

---

the motion for reconsideration, Magistrate Judge Rice reminded the parties that granting summary judgment meant the claim was "out of the case."

7

State Farm now appeals the trial court's molding of the verdict to $750,000 instead of $300,000. The Gibsons appeal the denial of their motion for reconsideration of their bad faith claim.

## II. STANDARD OF REVIEW

We exercise jurisdiction over these appeals pursuant to 28 U.S.C. §§ 636(c)(3) and 1291. We review a denial of a motion to mold the verdict under Rule 59(e) for abuse of discretion. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). Legal errors, including interpreting and applying a statute, amount to an abuse of discretion. *Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*, 877 F.3d 487, 494 (3d Cir. 2017).

We review a denial of a motion for reconsideration for abuse of discretion. *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999). To the extent the denial is based on legal issues, we review that determination *de novo*. *Id.* However, factual findings are reviewed for clear error. *Id.*

## III. DISCUSSION

### A. The Gibsons' Application Was A Valid Election Under § 1734

The parties do not dispute that Ms. Gibson signed *a* writing that elected the lower, $300,000 UIM limit—the three-page application which lists the $300,000 in stacked UIM coverage. What matters is whether that writing complies with § 1734. State Farm contends that it did, and that the Magistrate Judge erred in molding the jury verdict to reflect the higher bodily injury liability limit.

8

We begin, as always, with the plain text of the statute. *Rotkiske v. Klemm*, 890 F.3d 422, 424 (3d Cir. 2018) (en banc), *aff'd*,—— U.S. ——, 140 S. Ct. 355 (2019).

Section 1731 of the MVFRL obligates an insurance company issuing a policy in the Commonwealth to provide uninsured and underinsured motorist coverage in an amount equal to bodily injury limit coverage *except* as provided in Section 1734. Should an insured reject UM/UIM coverage entirely, the insured must execute a separate document in the specific form provided by § 1731(c) to demonstrate a knowing and voluntary waiver of this coverage. *Id.* § 1731(c). Failure to comply with the form renders the rejection void and the UIM coverage reverts to the default bodily injury limit. *Id.* But, if the insured desires to merely elect a lower amount of UM/UIM coverage, Section 1734 provides, "A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury." § 1734.

Section 1734 is a limited exception to Section 1731 that serves a limited purpose. It requires action on the part of the insured to take effect. Although compliance with Section 1731 requires the insured to execute a separate written rejection using the form provided in the MVFRL to disclaim all UM/UIM coverage, *see* § 1731(c), that same requirement is not incorporated into Section 1734. Beyond requiring a "request in writing," the statute is silent.

We previously found that Section 1734 is intended to provide a "very simple, clear-cut rule for an insurance company to follow—to lower the limits [of underinsured or uninsured motorist coverage] it must insist on a written

9

authorization signed by the named insured." *Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 232 (3d Cir. 1992) (holding an "oral" request to lower UIM coverage was not a request "in writing"). Predicting then how the Pennsylvania Supreme Court would interpret § 1734, we were guided by the plain meaning rule. "If the language be clear it is conclusive. There can be no construction where there is nothing to construe." *Id.* at 231 (quoting *United States v. Hartwell*, 73 U.S. 385 (1867)). Pennsylvania's Statutory Construction Act compelled the same result. "When the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. Cons. Stat. Ann. § 1921(b).

The Pennsylvania Supreme Court has emphasized that Section 1734's requirements are minimal. It too found that § 1734 was "plain and unambiguous." *Orsag v. Farmers New Century Ins.*, 15 A.3d 896, 901 (Pa. 2011). Moreover, it held that an insurer satisfies § 1734 when the writing contains (1) the signature of the insured and (2) an "express designation of the amount of coverage requested." *Id.* A specific dollar amount of UIM coverage on the insurance application is the clearest way an insured can "expressly designate" the amount of coverage desired. *Id.* So finding, the *Orsag* court did not endorse the insured's argument there that an application must include language demonstrating it is the insured's intent to select a lower limit to be a valid election. *Id.* at 899. Rather, by the application process itself, the insured willingly selected a reduced limit that "naturally rectified" any confusion about intent. *Id.* at 901.

The Pennsylvania Supreme Court recognized that insurance companies can exceed the requirements in the MVFRL. *Id.* An insurer could choose to include additional information on UM/UIM coverage, such as cost comparisons,

10

as it sees fit.  But the court saw "no purpose in requiring a separate statement when it is clear from the coverage selected that the insured intended reduced UM/UIM coverage."  *Id.*  To require otherwise lacked support in MVFRL's unambiguous text.  An insurance company's decision to include additional information and more forms does not rewrite the foundational requirements of the statute.  Nor does industry practice reform the law to require more than what the legislation dictates.  So, *Orsag* can best be understood as reiterating what must be met to constitute a valid election of reduced UM/UIM coverage.

Absent a statutory provision requiring an insurer to provide an additional form or certain magic words, we will not read in such a requirement here.  Indeed, there are no such magic words or documents.  The Pennsylvania Supreme Court has repeatedly rejected the argument that a separate writing is required to elect lower UIM limits.  *Id.*; *Lewis v. Erie Ins. Exch.*, 793 A.2d 143, 155 (Pa. 2002) (Section 1734 writing need not be on a separate page).  We agree with this logic which highlights the statutory differences between the express form requirement to waive all coverage under § 1731 and the "in writing" requirement to modify it under § 1734.  *See* A. Scalia & B. Garner, *Reading Law* 107 (2012) ("Negative–Implication Canon[:]  The expression of one thing implies the exclusion of others (*expressio unius est exclusio alterius*).").

With that understanding, we find that Ms. Gibson validly selected lower UIM coverage in her application.  The Gibsons have not shown that § 1734's writing requirement entails a more onerous standard.

Despite the similarities between this case and *Orsag*, the Magistrate Judge declined to follow *Orsag*, interpreting § 1731(a) and § 1734 together to require a "written notice that

11

UIM/UM coverage is available up to the amount of liability coverage, i.e., $750,000." *Gibson v. State Farm Fire and Cas. Co.*, No. CV 18-4919, 2020 WL 814977, at *5 (E.D. Pa. Feb. 18, 2020). To be sure, § 1731(a) requires that UM/UIM coverage must be offered in the amounts provided in § 1734. But § 1731 does not specify that the initial offering must be in writing—as the Magistrate Judge suggests. Further, § 1734 states that it is the insured—not the insurer—who makes the written request for lower UM/UIM coverage. The trial court appears to suggest that State Farm needed to offer in writing an insurance policy with bodily injury limits and UM/UIM coverage set at the same amount in the first instance, and then, the insured must request the lower UIM limit in writing. But this interpretation finds no support in the text of the MVFRL. So, that cannot be the basis on which to invalidate the election.

Nor do we find, as the Gibsons argue, that this case calls for an application of a panel of this Court's prior ruling in *Freeth v. Zurich Am. Ins. Co.*, 645 F. App'x 169 (3d Cir. 2016). The policy application here is distinct and thus compels a different result. In *Freeth*, the panel held that a summary application form seeking to reduce UM coverage in multiple states was not a "request" in writing under § 1734. *Id.* at 173. Critical to understanding the holding in *Freeth*, the summary form there carried the following disclaimer:

> Failure to return the signed Uninsured/Underinsured Motorist (UM/UIM) Selection/Rejection Summary Form and required state-specific forms prior to the policy inception date(s) will result in the policy being issued with coverage limits imposed by operation of state law. . . . THIS SUMMARY IS NOT A SUBSTITUTE FOR REVIEWING EACH INDIVIDUAL STATE'S SELECTION/REJECTION

12

FORM FOR UM AND UIM COVERAGE. *YOU ARE REQUIRED TO DO SO.*

*Id.* at 171. We read this plain language to mean what it said: the summary form explicitly and repeatedly warned that signing it alone was insufficient to effect a reduction in coverage. *Id.* at 172. The form required the insured to fill out separate, state-specific forms to complete an election of reduced UM/UIM limits. *Id.* So the panel declined a "hyper-technical and unnatural" reading that would otherwise find that that form satisfied § 1734. *Id.* Our task is to give meaning to words in their plain and ordinary sense. In *Freeth*, that meant holding that the summary form did not operate as a "request" in writing where the insured was expressly warned about but did not sign the Pennsylvania-specific form to reduce coverage.

The result the Court reaches today is not in tension with *Freeth*. To the contrary, the panel stressed in *Freeth* that that the decision should not be read to suggest that short summary documents can "never suffice to reduce coverage under section 1734." *Id.* It simply did not suffice under the unique circumstances in *Freeth*. *Id.* at 173. The Summary Form "clearly and repeatedly stated that signing the Summary Form was insufficient to effect a reduction in coverage." *Id.* There is no such disclaimer in State Farm's three-page document here that would suggest to the insured that signing just that document would not operate to reduce coverage. Nor is it the case that Ms. Gibson did not knowingly elect lower coverage in the Commonwealth when the very heading in the application she signed in April read "Signature Document—Pennsylvania." App. 615.

*Freeth* did not interpret Pennsylvania law to require insureds do anything more than sign a preprinted document. *Id.* at 172-73. *Orsag* did not so require, and the Pennsylvania Supreme Court has not since amended its interpretation of § 1734. Ms. Gibson signed the three-page application which clearly set forth the lower UM/UIM coverage limit. Section 1734 requires nothing more for a valid election for reduced coverage.

We pause briefly to consider the Magistrate Judge's finding that State Farm's labeling the acknowledgement form as "required" introduced ambiguity into the application. The Gibsons did not raise this argument throughout the proceedings. Rather, it surfaced for the first time only in the post-trial ruling.

The best articulation of the argument is that State Farm referring to additional documents in the application as "required" suggested to the Gibsons that they were entitled to additional information. Because these additional documents were, for whatever reason, neither presented to nor signed by Ms. Gibson at the same time she signed the three-page application, the Magistrate Judge found that the three-page document was not intended to constitute an offer of reduced UIM coverage. But in so finding, he elided two separate—albeit related—concepts. There may well have been ambiguity as to whether State Farm would supply additional information, along the lines considered but not required by the *Orsag* court. We can appreciate the Magistrate Judge's sense that State Farm could perhaps have been more dedicated to the highest standards of clarity. But focusing on what is important here, we do not find the *amount* of UIM/UM coverage the Gibsons selected to itself be ambiguous. *Cf. Olender v. Nat'l Cas. Co.*, No. CIV.A. 11-4098, 2012 WL 3590693, at *1 (E.D. Pa. Aug.

14

21, 2012) (construing ambiguity in policy in favor of insured where insured requested UIM coverage at both $100,000 and $35,000 limits in same policy).[3]

For these reasons, we will reverse the Magistrate Judge's Order granting the Gibsons' motion to mold the verdict to $750,000.

### B. The Magistrate Judge Correctly Denied the Gibsons' Bad Faith Claim

The Gibsons also appeal the Magistrate Judge's denial of their motion for reconsideration hoping to revive their statutory bad faith claim post-verdict.[4]    A motion for

---

[3]    Although not dispositive to our decision, the Court notes that certain documents are not "required" under the MVFRL, although State Farm referred to them as "required" (i.e., the good student discount and the "Important Notice" found in § 1791).  And when Ms. Gibson submitted the other documents to State Farm, she again signed a form acknowledging she desired lower UIM coverage.  Moreover, to the extent the Magistrate Judge suggests that Ms. Gibson's election was not knowing—because she lacked additional information—such an additional requirement would be contrary to Pennsylvania law.  *See Hartford Ins. Co. v. O'Mara*, 907 A.2d 589, 602–03 (Pa. Super. Ct. 2006) (en banc) ("[T]he language utilized need only convey an insured's desire to purchase uninsured and underinsured coverage in amounts less than or equal to bodily injury limits and the amount of the requested coverage.").

[4]    The Magistrate Judge entered an order granting partial summary judgment for State Farm and dismissing the Gibsons'

reconsideration requires the movant to show (1) an intervening change in the controlling law; (2) new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or prevent manifest injustice. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). The Gibsons contend that "new" evidence—State Farm's post-accident attempt to cabin the policy limits—and the need to avoid manifest injustice warrant reconsideration.

As a threshold matter, the Magistrate Judge properly disregarded the jury verdict of $1.75 million as irrelevant to the bad faith claim. Indeed, at oral argument, the Gibsons admitted this fact. Instead, the Magistrate Judge looked only at the actions and omissions of State Farm to evaluate Ms. Gibson's claim when it was submitted and then processed.

In support of their motion, the Gibsons argued that Ms. Gibson's failure to sign the UIM coverage selection form until after the accident was "new" evidence of State Farm's bad faith. The Magistrate Judge correctly declined to consider these facts as "new." State Farm had consistently maintained that the application established the UIM policy limit and provided the Gibsons with access to relevant documents. So, the supposed "post-trial revelation" of State Farm's alleged bad faith was not "new" evidence that would be appropriate for a motion for reconsideration. *See United States ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d

---

bad faith claim on July 19, 2019, and a separate order denying the Gibsons' motion for reconsideration on February 18, 2020. The Gibsons appeal only the denial of the motion for reconsideration and not the underlying order denying partial summary judgment and dismissing their bad faith claim.

16

Cir. 2014) (affirming denial of reconsideration where evidence could have been submitted at motion to dismiss stage).

The Gibsons shade their argument on appeal to argue that the "new evidence" is State Farm's "deceptive conduct" to hide the "actual UM/UIM limits." Gibson Br. at 9, 11. Because State Farm maintained that its exposure was at most $300,000, the Gibsons contend State Farm had less of an incentive to resolve the case earlier. The Gibsons also rely on the intervening time between signing the April application and the additional documents in May to claim that State Farm "intentionally misrepresent[ed]" the UIM policy limits. *Id*. at 16.

At its core, this is the same argument that the Gibsons raised before the Magistrate Judge. And like the Magistrate Judge, we also find it unavailing.

Pennsylvania provides for a statutory remedy for an insurer's bad faith in acting upon an insured's claim. 42 Pa. C.S.A. § 8371. To prevail on a bad faith claim, the insured must demonstrate "by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). The evidentiary burden on a plaintiff opposing a summary judgment motion is "commensurately high." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004). By contrast, all that is needed to defeat a claim of bad faith under § 8371 is evidence of a reasonable basis for the insurer's actions or inaction. *Id.*

Here, State Farm believed the Gibsons' application complied with § 1734—a belief we find not only reasonable but correct. So, State Farm's reliance on the lower UM/UIM coverage limits in informing its investigation and settlement offers was therefore not deceptive.

We are not persuaded that State Farm "intentionally misrepresented" the policy limits when the documents executed after the accident reflect the same lower UIM amounts as in the April application. This may well have been a closer case if there were some material differences in the coverage amounts or if Ms. Gibson had objected to the lower coverage limit in May. But she did not.[5] So, the Magistrate Judge properly denied the motion to reconsider when there was no "new" evidence proffered.

As to the Gibsons' second argument, motions for reconsideration are not a vehicle to argue facts or issues that were not raised. *See, e.g.*, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (holding a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment"). But that is what seems to have happened here.

The Gibsons admittedly failed to request certain documents in discovery (including the "Best Practices

---

[5] Ms. Gibson's injuries at the time the signed the documents in May do not alter the analysis here. She was accompanied by her husband who is also a named insured in the policy and was not injured. They drove together to the State Farm office. There is no allegation that she suffered head trauma, or any other injury that would have affected her understanding of the document she was signing.

Manual")—and have not persuasively justified this failure. Likewise, the joint Rule 26(f) report presented to the Magistrate Judge explicitly discusses coverage limits and State Farm's position that Ms. Gibson elected the lower UIM coverage. Thus, the issue was front and center and ripe for discovery activities.

Moreover, even with this information at their disposal *pre*-trial, the Gibsons did not argue bad faith based on an alleged misrepresentation of coverage. They chose instead to base their bad faith claim on an alleged failure by State Farm to investigate the Gibsons' claim. Their failure to challenge the amount of their coverage pre-trial, when the information about the Gibsons' UIM election was included in the discovery report authored and presumably read by both parties' lawyers, does not now afford the Gibsons a second bite at the insurance apple.

State Farm's actions did not misrepresent the applicable coverage limits. The Magistrate Judge correctly denied the Gibsons' motion for reconsideration when the only basis was what the Gibsons should, could, and ought to have raised earlier but did not.

*　　*　　*

For the foregoing reasons, we will affirm the Magistrate Judge's order insofar as he denied the Gibsons' motion for reconsideration of the grant of summary judgment. We will reverse the order granting the Gibsons' motion to mold the verdict to $750,000 and remand with instructions to mold the jury verdict to the $300,000 UIM limit under the Gibsons' policy.

19