**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1724
_____

JENNA OCKFORD; JUSTIN HERBST,
                                        Appellants

v.

ENCOMPASS INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:24-cv-01581)
Magistrate Judge: Honorable Elizabeth T. Hey
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 17, 2026

Before: MATEY, FREEMAN, and CHUNG, *Circuit Judges*

(Opinion filed: June 22, 2026)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FREEMAN, *Circuit Judge*.

Jenna Ockford and her husband Justin Herbst (collectively, "Plaintiffs") appeal the District Court's grant of summary judgment on their bad faith claim against their motor vehicle insurance provider, Encompass Insurance Co. ("Encompass").[1] We will affirm the judgment.

**I.**

On December 16, 2022, Plaintiffs were struck by a motor vehicle while walking across a street in Newtown, Pennsylvania. Herbst hit his head on the asphalt and briefly lost consciousness. Ockford landed on her buttocks and back. Plaintiffs both went to the hospital by ambulance.

At the hospital, Ockford complained of back and elbow pain. Scans of her back showed a fracture of her fourth lumbar vertebrae that was "probably chronic in nature," but no acute fractures or malalignment. App. 123. No scans were taken of her elbow, and she was released that day. Herbst stayed at the hospital overnight after scans of his head showed he had subdural hematomas and a skull fracture.

Six days after the accident, Plaintiffs reported the accident to Encompass and gave the company contact information for their attorney ("Counsel"). Plaintiffs' policy with Encompass provided up to $200,000 per person in underinsured motorist ("UIM")

---

[1] By consent of the parties, a United States Magistrate Judge sat as the District Court. *See* 28 U.S.C. § 636(c).

benefits. Encompass later learned that the driver of the vehicle that struck Plaintiffs had a policy from another insurer with liability limits of $25,000 per person.

On January 9, 2023, Encompass's claims adjuster provided her contact information to Counsel. On January 13, the adjuster called Counsel's office to request information about Plaintiffs' treatment and injuries. On January 16, Counsel's paralegal told the adjuster that the paralegal had no updated information, and the adjuster said she would follow up in thirty days.

Thirty days later, the adjuster called and emailed Counsel to request details about Plaintiffs' injuries, treatment, billing, and wage loss. The adjuster continued to call and email Counsel repeatedly over the next six months. She received no information from Counsel's office until July 2023, when Counsel's paralegal reported by telephone that Plaintiffs were still receiving treatment for their injuries.

In August 2023, the adjuster emailed Counsel to request specifics about Plaintiffs' injuries and treatment. In September 2023, Counsel's paralegal spoke to the adjuster and reported that Ockford had sustained a non-surgical elbow fracture and was seeing a chiropractor for lumbar spine symptoms, and Herbst had non-surgical head and neck injuries although his treatment status was unknown. Counsel's office did not send the adjuster any records.

In October 2023, Counsel informed the adjuster that Plaintiffs would be settling their claim against the driver's insurance company and had accepted the driver's policy limit of $25,000 for each of them. Counsel also confirmed that Plaintiffs were pursuing UIM benefits from Encompass.

3

In December 2023, nearly a year after the accident, the adjuster received a first round of records to support Plaintiffs' UIM claims. Stating that more records would follow, Counsel provided records from Ockford's emergency room visit on the date of the accident, her follow-up visit with an orthopedist a week later, and five visits to a chiropractor in April 2023. These records included no diagnosis of an elbow fracture and no information about lost wages or out-of-pocket expenses. As to Herbst, Counsel provided records from the post-accident hospital visit, a visit with an orthopedist a week later, and a primary care visit in February 2023.

Two days after receiving those records, the adjuster extended offers to Plaintiffs "based upon the information available at this time" and stated that she would reevaluate the offers based on any additional documentation she received from Counsel. Supp. App. 563. After reducing her valuation of each claim by $25,000 to account for the amounts Plaintiffs received from the driver's insurance company, the adjuster offered $10,000 to resolve Herbst's claim and $3,000 to resolve Ockford's claim.

In January 2024, Counsel sent the adjuster records documenting a medical lien for Herbst and Ockford's diagnosed elbow fracture. Six days later, based on the new documentation, the adjuster increased her offers to $34,000 for Herbst and $18,000 for Ockford. Again, the claims valuations were offset by the payments from the driver, and the adjuster stated that she would consider any additional documentation she received from Counsel. The adjuster received no response, so she followed up in February 2024.

In March 2024, Counsel sent the adjuster additional medical records and wage loss documentation, demanded the $200,000 policy limits each for Ockford and Herbst, and

threatened to sue Encompass if the matter was not resolved in two weeks.  One week later, based on the new documentation, the adjuster sent Counsel increased offers of $91,000 for Herbst and $32,500 for Ockford.  In her correspondence, she included a list of the additional treatment records, wage documentation, and radiological reports and films that she sought to support the claims.

In April 2024, without responding to the adjuster's document requests, Plaintiffs sued Encompass.  As relevant here, they claimed that Encompass acted in bad faith in violation of Pennsylvania law, and they sought punitive damages, interest, costs, and attorney's fees.  *See* 42 Pa. C.S. § 8371.[2]

The District Court granted summary judgment to Encompass on the bad faith claim.  After the court entered final judgment, Plaintiffs timely appealed.

**II**[3]

To prevail on a bad faith insurance claim under Pennsylvania law, "a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or

---

[2] The parties settled Herbst's UIM claim while the litigation was pending.  Plaintiffs did not amend their complaint to make any allegations about events post-dating the initial filing.

[3] The District Court had jurisdiction under 28 U.S.C. § 1332.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's grant of summary judgment de novo.  *Le Pape v. Lower Merion Sch. Dist.*, 103 F.4th 966, 977 (3d Cir. 2024).  Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* (quoting Fed. R. Civ. P. 56(a)).  "We review all the facts in the light most favorable to the non-moving party and draw all justifiable inferences in its favor."  *Id.* (citation modified).

recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). "[A]ll that is needed to defeat a claim of bad faith under [42 Pa. C.S.] § 8371 is evidence of a reasonable basis for the insurer's actions or inaction." *Gibson v. State Farm Mut. Auto. Ins. Co.,* 994 F.3d 182, 191 (3d Cir. 2021).

Plaintiffs argue that Encompass's offers bore no reasonable relationship to the injuries they sustained. Among other things, they point to the initial offers of $10,000 and $3,000 and the increase in the offer amounts over time.[4] But Plaintiffs have adduced no evidence to support that Encompass's actions were unreasonable. As the District Court detailed in its thorough opinion, Encompass's adjuster made repeated requests for documentation to support Plaintiffs' claims. After failing to provide documentation for a year, Plaintiffs submitted records that did not substantiate the extent of their injuries and other losses. As Plaintiffs gradually substantiated their injuries and losses, Encompass increased its offers, and it did so within the scope of its valuation ranges.

Plaintiffs also argue that Encompass failed to obtain independent medical opinions or research settlement amounts for similar injuries. But Plaintiffs allowed little time for such actions; they filed suit just two weeks after Encompass's adjuster said an independent medical opinion may be necessary, and they did so without responding to the adjuster's requests for documentation.

---

[4] Plaintiffs discuss these dollar amounts without acknowledging that each offer was reduced by $25,000 to account for the amounts Plaintiffs received from the driver's insurer.

In light of the above, no reasonable factfinder could find Encompass's actions were unreasonable.

\* \* \*

For the foregoing reasons, we will affirm the District Court's judgment.